# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### HARRISBURG DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | (Request for Expedited Consideration) |

## DEBTOR'S <u>EMERGENCY</u> APPLICATION FOR
## ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC
## <u>AS CLAIMS, NOTICING, SOLICITATION, AND ADMINISTRATIVE AGENT</u>

The Roman Catholic Diocese of Harrisburg, the debtor and debtor in possession (the "***Debtor***"), by and through its undersigned proposed counsel, files this application (the "***Application***") for entry of an order, substantially in the form attached to this motion as **<u>Exhibit A</u>** (the "***Proposed Order***"), pursuant to section 156(c) of title 28 of the United States Code, sections 105(a), 327(a), 328(a), and 503(b) of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Local Rules 2014-1 and 9013-1 of the Local Bankruptcy Rules (the "***Local Rules***"), appointing Epiq Corporate Restructuring, LLC ("***Epiq***") as claims and noticing agent ("***Claims and Administrative Agent***") in the Debtor's chapter 11 case effective *nunc pro tunc* to the Petition Date (as defined below). In support of the Application, the Debtor submits the *Declaration of Emily Young in Support of Application of Debtor for Order Appointing Epiq Corporate Restructuring, LLC as Claims, Noticing, Solicitation, and Administrative Agent* (the "***Young Declaration***"),

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

4849-5052-2290.5

attached to this motion as **<u>Exhibit B</u>**, and respectfully represents as follows:

<u>JURISDICTION AND VENUE</u>

1.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Middle District of Pennsylvania. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008 and Local Rule 7008-1, to the entry of a final order by the Court in connection with this Application, to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>BACKGROUND</u>

3.　　On the date of this motion (the "***Petition Date***"), the Debtor filed a voluntary petition for relief in this Court, pursuant to chapter 11 of the Bankruptcy Code, commencing this case (the "***Chapter 11 Case***").

4.　　The Debtor continues to operate its business as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.　　No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case, nor have any committees been appointed or designated.

6.　　A description of the Debtor's business, the reasons for commencing this Chapter 11 Case, the relief sought from this Court, and the facts and circumstances supporting this Application are set forth in the *Informational Brief of the Roman Catholic Diocese of Harrisburg* (the "***Informational Brief***") and the *Declaration of Christopher G. Linscott in Support of First Day Motions* (the "***Linscott Declaration***" and, with the Informational Brief, collectively, the "***First Day Informational Pleadings***").

7.     Pursuant to Local Rule 9075-1 and Bankruptcy Rule 6003, the Debtor requests emergency consideration of this Motion. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As discussed in detail below and in the First Day Informational Pleadings, any delay in granting the relief requested could hinder the Debtor's operations and cause immediate and irreparable harm. As such, the Debtor believes that emergency consideration is necessary and requests that this Motion be heard at the Debtor's first day hearing.

**REQUESTED RELIEF**

8.     The Debtor seeks entry of the Order, appointing Epiq as the Claims and Administrative Agent in this Chapter 11 Case, effective *nunc pro tunc* to the Petition Date. Specifically, the Debtor requests entry of an order appointing Epiq as the Claims and Administrative Agent to, among other things, (a) serve as the noticing agent to mail notices to the estate's creditors and other parties in interest, (b) provide computerized claims, objection, and solicitation- and balloting-related services, and (c) assist the Debtor in claim and ballot processing and other administrative services with respect to this Chapter 11 Case, in each case, pursuant to the terms of the Engagement Agreement, dated January 17, 2020 (the "***Epiq Agreement***"), between the Debtor and Epiq, a copy of which agreement is attached as **Exhibit 1** to the Proposed Order.

**EPIQ'S QUALIFICATIONS**

9.     Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience providing services, including claims and noticing services, in matters comparable in size and complexity to this matter. *See, e.g.*, *In re ON Marine Servs. Co. LLC*, No. 20-20007 (Bankr. W.D. Pa. Jan. 2, 2020); *In re*

*Vector Launch Inc.*, No. 19-12670 (Bankr. D. Del. Dec. 13, 2019); *In re Southern Foods Group, LLC*, No. 19-36313 (Bankr. S.D. Tex. Nov. 12, 2019); *In re Approach Resources Inc.,* No. 19-36444 (Bankr. S.D. Tex. Nov. 18 2019); *In re Walker Cnty. Hosp. Corp.*, No. 19-36300 (Bankr. S.D. Tex. Nov. 11, 2019); *In re Fred's Inc.*, No. 19-11984 (Bankr. D. Del. Sep. 9, 2019); *In re Ditech Holding Corp.*, No. 19-10412 (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Trident Holding Co., LLC*, No. 19-10384 (Bankr. S.D.N.Y. Feb. 10, 2019).

10.     The appointment of Epiq as Claims and Administrative Agent in this Chapter 11 Case will expedite the distribution of notices and the processing of claims, and the office of the Clerk of the Bankruptcy Court for the Middle District of Pennsylvania (the "***Clerk***") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

## SERVICES TO BE PROVIDED

11.     This application pertains to the work to be performed by Epiq under section 327(a) of the Bankruptcy Code and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c). Specifically, Epiq will perform, to the extent the Debtor requests, the following services in its role as the Claims and Administrative Agent (the "***Claims and Administrative Services***"), as well as all quality control relating thereto:[2]

> a.     preparing and serving required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in the form and manner directed by the Debtor and/or the Court, including, if applicable, (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors (if any) under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, notices of objections to claims, and objections

---

[2] The list of Claims and Administrative Services to be performed by Epiq is intended to be broad and certain services may not be necessary in this Chapter 11 Case. Only those services that are requested by the Debtor will be performed by Epiq.

to transfers of claims, (iv) notices of any hearings on a disclosure statement and confirmation of the Debtor's chapter 11 plan, including under Bankruptcy Rule 3017(d), (v) notice of the effective date of any chapter 11 plan, and (vi) all other notices, orders, pleadings, publications, and other documents as the Debtor and/or the Court may deem necessary or appropriate for an orderly administration of this Chapter 11 Case;

b.    preparing and filing or causing to be filed with the Clerk an affidavit or certificate of service for all notices, motions, orders, other pleadings, or documents served within seven business days of service that includes either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

c.    assisting the Debtor with administrative tasks in the preparation of its bankruptcy Schedules of Assets and Liabilities ("*Schedules*") and Statements of Financial Affairs ("*Statements*"), if such Schedules and Statements are required by the Court, including (as needed): (i) coordinating with the Debtor and its advisors regarding the Schedules and Statements process, requirements, timelines, and deliverables; (ii) creating and maintaining databases for maintenance and formatting of Schedules and Statements data; (iii) coordinating collection of data from the Debtor and its advisors; and (iv) providing data entry and quality assurance assistance regarding Schedules and Statements;

d.    assisting the Debtor in managing the claims reconciliation and objection process;

e.    maintaining (i) a list of all potential creditors, equity holders, and other parties in interest, and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

f.    if a claims bar date is established, furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notifying potential creditors of the existence, amount, and classification of its claims as set forth in the Schedules (if applicable), which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

g.   maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

h.   processing all proofs of claim received, including those received by the Clerk's office, and checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

i.   maintaining the official claims register for the Debtor (the "***Claims Register***") on behalf of the Clerk and upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers; and specifying in each of the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); and (vi) any disposition of the claim;

j.   implementing necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

k.   recording all transfers of claims and providing any notices of such transfers as required by Bankruptcy Rule 3001(e);

l.   relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

m.   upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

n.   monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and making necessary notations on and/or changes to the Claims Registers;

o.   assisting in the dissemination of information to the public and responding to requests for administrative information regarding the case, as directed by the Debtor and/or the Court, including through the use of a case website and/or call center;

p.   30 days prior to the close of this Chapter 11 Case, to the extent practicable, requesting that the Debtor submit to the Court a proposed order dismissing Epiq and terminating Epiq's services upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

q.    within seven days' notice to Epiq of entry of an order closing this Chapter 11 Case, providing to the Court the final versions of the Claims Register as of the date immediately before the close of this Chapter 11 Case;

r.    at the close of this Chapter 11 Case, boxing and transporting all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064 or (ii) any other location requested by the Clerk's Office.

s.    coordinating publication of certain notices in periodicals and other media;

t.    to the extent necessary, distributing claim acknowledgement cards to creditors having filed a proof of claim or interest, as applicable;

u.    providing balloting, solicitation, and tabulation services, including preparing ballots, producing personalized ballots, assisting in the production of solicitation materials, tabulating creditor ballots on a daily basis, preparing a certification of voting results, and providing court testimony with respect to balloting, solicitation, and tabulation matters;

v.    providing state-of-the-art call center facility and services, including (as needed): (i) creating of frequently asked questions, call scripts, escalation procedures and call log formats; (ii) recording automated messaging; (iii) training call center staff; and (iv) maintaining and transmitting call log to the Debtor and its advisors;

w.    creating and maintaining a public access website setting forth pertinent case information and allowing access to electronic copies of proofs of claim or proofs of interest;

x.    providing the Debtor with consulting and computer software support regarding the reporting and information management requirements of the bankruptcy administration process;

y.    educating and training the Debtor in the use of support software, as necessary;

z.    generating, assisting with, and providing strategic communications advice, strategy, and expertise, as needed; and

aa.   providing such other claims processing, noticing, and related administrative services as may be requested from time to time by the Debtor.

12.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq. Epiq shall not employ any past or present employee of the Debtor for work that involves this Chapter 11 Case.

13.     Epiq will follow the notice and claims procedures that conform to the guidelines promulgated by the Clerk's Office or as otherwise directed by the Court.

<u>COMPENSATION AND REPRESENTATION OF DISINTERESTEDNESS</u>

14.     The Debtor proposes to compensate Epiq on substantially the terms and conditions set forth in the Epiq Agreement, upon receipt of reasonably detailed invoices setting forth the services provided by Epiq during the prior month and the rates charged for such services performed.

15.     The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Administrative Services, in accordance with the fee schedule appended thereto, be treated as administrative expenses of the Debtor's estate pursuant to Judicial Code Section 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the office of the United States Trustee for the Middle District of Pennsylvania (the "***U.S. Trustee***"), counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Epiq Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

16.     Prior to the Petition Date, the Debtor provided Epiq a retainer in the amount of $15,000, which Epiq applied to all prepetition invoices. In addition, prior to the Petition Date, the

Debtor made an advance payment in the amount of $15,000, representing the anticipated costs associated with Epiq's services in connection with the initial commencement of this case.

17.     In connection with its retention as Claims and Administrative Agent, Epiq represents in the Young Declaration, among other things, that:

a.     Epiq is not a creditor of the Debtor;

b.     Epiq will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Administrative Agent in the Chapter 11 Case;

c.     by accepting employment in the Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with the Chapter 11 Case;

d.     in its capacity as the Claims and Administrative Agent in the Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

e.     Epiq is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14) with respect to the matters upon which it is to be engaged.

18.     To the extent that there is any inconsistency between this Application, the Order, or the Epiq Agreement, the Order will govern.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

19.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

20.     Nothing contained in this motion is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against the Debtor; (b) a waiver of the Debtor's or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise

Case 1:20-bk-00599-HWV    Doc 7    Filed 02/19/20    Entered 02/19/20 13:10:13    Desc
Main Document      Page 9 of 42

or requirement to pay a prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in this Application or any order granting the relief requested by this Application; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## NOTICE

21.     The Debtor has provided notice of this Application by electronic mail, facsimile, or overnight mail to: (a) the Office of the United States Trustee for the Middle District of Pennsylvania; (b) the Debtor's twenty (20) largest unsecured creditors; (c) the Debtor's secured creditors; and (d) all parties entitled to notice pursuant to Rule 2002 of the Bankruptcy Rules.

## NO PRIOR REQUEST

22.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order, granting the relief requested in this motion and such other relief as the Court deems appropriate under the circumstances.

Dated: February 19, 2020
Nashville, Tennessee

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

/s/ Blake D. Roth
Blake D. Roth (State Bar No. 306951)
Tyler N. Layne (*pro hac vice* admission pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:     (615) 244-6380
Facsimile:     (615) 244-6804
Email:         blake.roth@wallerlaw.com
               tyler.layne@wallerlaw.com

-and-

KLEINBARD, LLC

Matthew H. Haverstick (State Bar No. 85072)
Joshua J. Voss (State Bar No. 306853)
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, Pennsylvania 19103
Telephone:     (215) 568-2000
Facsimile:     (215) 568-0140
Email:         mhaverstick@kleinbard.com
               jvoss@kleinbard.com

*Proposed Attorneys for the Debtor and Debtor In Possession*

**Exhibit A**
**Proposed Order**

4849-5052-2290.5

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

## ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, SOLICITATION, AND ADMINISTRATIVE AGENT

Upon the *Debtor's Application for Order Appointing Epiq Corporate Restructuring, LLC as Claims, Noticing, Solicitation, and Administrative Agent* (the "***Application***")[2] for entry of an order (this "***Order***") authorizing the Debtor to employ and retain Epiq Corporate Restructuring, LLC ("***Epiq***") as claims, noticing, and solicitation agent ("***Claims and Administrative Agent***"), all as more fully set forth in the Application; and upon the Young Declaration, and upon the First Day Informational Pleadings; and upon this Court finding it has jurisdiction over the Application and the relief sought in the Application; and upon this Court finding venue for the Application is proper in this Court; and upon finding that due and sufficient notice of the Application has been given, the notice given satisfies the requirements of Rule 6004(a) of the Bankruptcy Rules, and no other or further notice is necessary or required; and upon finding the contents of the Application satisfy the requirements of Rule 6003(b) of the Bankruptcy Rules; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court, if any (the "***Hearing***"); and this Court having determined that the legal and

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

4849-5052-2290.5

factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Debtor is authorized to retain Epiq, as claims, noticing, solicitation, and administrative agent, effective *nunc pro tunc* to the Petition Date, under the terms of the Epiq Agreement, and Epiq is authorized and directed to perform all tasks described in the Application and the Epiq Agreement, except as otherwise provided in this Order. If Epiq is unclear as to the application or any rule, it is to seek guidance from the Clerk.

2.     Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim (if any) filed in the Chapter 11 Case and is authorized and directed to maintain an official claims register for the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

3.     Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim. Epiq is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim. Epiq shall provide access to the claims register, including complete proofs of claim with attachments, if any, without charge.

4.     Epiq is authorized to take such other action to comply with all duties set forth in the Application.

5.     Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Epiq's fees and expenses shall be treated as an administrative expense of the Debtor's estate and shall be paid by the Debtor in accordance with the terms of the Epiq Agreement

upon receipt of each Epiq invoice by the Debtor, unless Epiq is advised, within ten days of receipt of the invoice, that the Office of the United States Trustee for the Middle District of Pennsylvania, counsel for the Debtor, counsel for any official committee, if any, or any party in interest who specifically requests service of the monthly invoices, objects to the invoice, in which case the parties shall meet and confer in an attempt to resolve any dispute. The parties may seek resolution of the matter from the Court if resolution is not achieved. In the event of a disputed invoice, the Debtor shall remit to Epiq only the undisputed portion of the invoice and, if applicable, shall pay the remainder to Epiq upon the resolution of the disputed portion.

6.      Epiq shall maintain records of all services showing dates of any services rendered pursuant to the Epiq Agreement, categories of services, fees charged, and expenses incurred, and shall serve electronically monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices.

7.      Epiq may apply its retainer to all prepetition invoices and, thereafter, Epiq may hold its retainer under the Epiq Agreement during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Epiq Agreement.

8.      Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Epiq Agreement for services other than the services provided under the Epiq Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

9.      Notwithstanding anything to the contrary in the Epiq Agreement, the Debtor shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either: (a) judicially determined (the determination having become final)

to have arisen solely from Epiq's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (if any); (b) for a contractual dispute in which the Debtor alleges the breach of Epiq's contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (c) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); or (d) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution, or reimbursement under the terms of the Epiq Agreement as modified by this Order.

10.     Notwithstanding the Application or the Epiq Agreement, to the extent the Debtor wishes to expand the scope of Epiq's services beyond those services set forth in the Application and the Epiq Agreement, the Debtor shall be required to seek further approval from this Court.

11.     After entry of an order terminating Epiq's services upon the closing of this case or for any other reason, Epiq shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and shall be compensated by the Debtor in connection therewith.

12.     The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

14.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

15.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing this chapter 11 case, Epiq believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Epiq Agreement (as modified by this Order), including the advancement of defense costs, Epiq must file an application in this Court, and the Debtor may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement. If Epiq seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Epiq Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Epiq's own applications, both interim and final, but determined by this Court after notice and a hearing.

16.     Epiq shall not cease providing claims processing services during the chapter 11 case for any reason, including nonpayment, without an order of this Court. If this case converts to a case under chapter 7 of the Bankruptcy Code, Epiq shall cooperate with the Clerk to turn over to the Clerk or another agent any materials that the Clerk requests unless Epiq continues as claims and noticing agent following the conversion.

17.     In the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.

**EXHIBIT 1**
**EPIQ AGREEMENT**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1. Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3. Charges.**

3.1 For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2021. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3   Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4   Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5   Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6   In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7   To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $15,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.  **Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement unless such unauthorized acquisition or use of the Client Data was a result of Epiq's gross negligence or willful misconduct.

Case 1:20-bk-00599-HWV    Doc 7    Filed 02/19/20    Entered 02/19/20 13:10:13    Desc
Main Document      Page 21 of 42



**5. Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property. For purposes of clarity, Client Data shall not be considered "Property" of Epiq.

**6. Disposition of Data.**

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**7. Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an

3



"Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE TWELVE (12) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



## 9. Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11. General

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

5



11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

6



11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq</u>:     Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Robert A. Hopen

<u>If to Client</u>:     Roman Catholic Diocese of Harrisburg
Attn:   Very Reverend David L. Danneker, Ph.D.
Vicar General and Moderator of the Curia
4800 Union Deposit Road
Harrisburg, Pennsylvania 17111-3710
Email:  frddanneker@hbgdiocese.org

*With a copy to:*

**Waller Lansden Dortch & Davis, LLP**
Attn:   Blake D. Roth
Tyler N. Layne
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Email:  blake.roth@wallerlaw.com
tyler.layne@wallerlaw.com

*-and-*

**Keegan Linscott & Associates, PC**
Attn:   Christopher G. Linscott
3443 N. Campbell Avenue, Suite 115
Tucson, Arizona 85719-2328
Email:  clinscott@keeganlinscott.com

11.11  Invoices sent to Client should be delivered to the following address:

Roman Catholic Diocese of Harrisburg
Attn:   Very Reverend David L. Danneker, Ph.D.
Vicar General and Moderator of the Curia
4800 Union Deposit Road
Harrisburg, Pennsylvania 17111-3710
Email:  frddanneker@hbgdiocese.org

7



11.12  The "Effective Date" of this Agreement is January 17, 2020.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Robert A. Hopen
Title:    President

**ROMAN CATHOLIC DIOCESE OF HARRISBURG**

By:
Name:  FR. DAVID L DANNEKER
Title:   VICAR GENERAL

8

# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.


- ➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- ➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- ➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

- ➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


## **NOTICING**

- ➢ Prepare and serve required notices in these  Chapter 11 cases, including:

  - Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

  - Notice of any auction sale hearing;

  - Notice of the claims bar date;

  - Notice of objection to claims;

  - Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

  - Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

- ➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

- ➢ Update claim database to reflect undeliverable or changed addresses.

- ➢ Coordinate publication of certain notices in periodicals and other media.

2



➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## **BALLOTING/TABULATION**

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties. Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## **CALL CENTER**

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

3



**MISCELLANEOUS**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

4



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $25.00 – $45.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $70.00 – $145.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $190.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1] Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.



## CALL CENTER RATES

Standard Call Center Setup        NO CHARGE

Call Center Operator        $55 per hour

Voice Recorded Message        $0.34 per minute

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources        Quoted at time of request

Depositions/Court Reporting        Quoted at time of request, bundled pricing available

eDiscovery        Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace        Quoted at time of request

Disbursements -- Check and/or Form 1099        Quoted at time of request

Disbursements -- Record to Transfer Agent        Quoted at time of request

6

**EXHIBIT B**
**YOUNG DECLARATION**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**HARRISBURG DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

**DECLARATION OF EMILY YOUNG**
**IN SUPPORT OF APPLICATION OF DEBTOR FOR**
**ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS**
**CLAIMS, NOTICING, SOLICITATION, AND ADMINISTRATIVE AGENT**

I, Emily Young, declare as follows:

1.      I am a Senior Consultant of Epiq Corporate Restructuring, LLC ("***Epiq***"), which maintains an office at 777 Third Avenue, Twelfth Floor, New York, New York, 10017. I am duly authorized to make this declaration on behalf of Epiq, and I submit this declaration on behalf of Epiq (the "***Young Declaration***") in support of the application (the "***Application***")[2] of the debtor and debtor in possession in the above-captioned chapter 11 case (the "***Debtor***"), for an order under Judicial Code Section 156(c), Bankruptcy Code Sections 105(a), 327(a), 328(a), and 503(b), Bankruptcy Rules 2014 and 6004, and Local Rules 2014-1 and 9013-1 appointing Epiq as claims, noticing, solicitation, and administrative agent pursuant to the terms of the Epiq Agreement. The facts set forth in this declaration are personally known to me and, if called as a witness, I could and would testify to such facts.

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2.     As the Claims and Administrative Agent, Epiq will perform at the request of the Clerk the services specified in the Application and the Epiq Agreement. In addition, at the Debtor's request, Epiq will perform such other Claims and Administrative Services specified in the Application.

3.     Epiq represents that:

a.     it is not a creditor of the Debtor;

b.     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Administrative Agent in this chapter 11 case;

c.     by accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.     in its capacity as the Claims and Administrative Agent in this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

e.     it is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14) with respect to the matters upon which it is to be engaged.

4.     Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience providing services, including claims and noticing services, in matters comparable in size and complexity to this matter or substantially similar services in other chapter 11 cases nationwide.[3]

---

[3] Nationally, Epiq has provided identical or substantially similar services in chapter 11 cases. *See, e.g.*, *In re ON Marine Servs. Co. LLC*, No. 20-20007 (Bankr. W.D. Pa. Jan. 2, 2020); *In re Vector Launch Inc.*, No. 19-12670 (Bankr. D. Del. Dec. 13, 2019); *In re Approach Inc.,* No. 19-36444 (Bankr. S.D. Tex. Nov. 18, 2019); *In re Southern Foods Group, LLC*, No. 19-36313 (Bankr. S.D. Tex. Nov. 12, 2019); *In re Walker Cnty. Hosp. Corp.*, No. 19-36300 (Bankr. S.D. Tex. Nov. 11, 2019); *In re Fred's Inc.*, No. 19-11984 (Bankr. D. Del. Sep. 9, 2019); *In re Ditech Holding Corp.*, No. 19-10412 (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Trident Holding Co., LLC*, No. 19-10384 (Bankr. S.D.N.Y. Feb. 10, 2019).

5.     In connection with the preparation of this declaration, I caused to be submitted for review by our conflicts system the names of interested parties and significant creditors (the "***Potential Parties in Interest***") in this chapter 11 case. The list of Potential Parties in Interest was provided by the Debtor and included the Debtor, the Debtor's current and former directors and officers, significant stockholders, secured creditors, top unsecured creditors, and other parties. The results of the conflicts check were compiled and reviewed by employees of Epiq, under my supervision. At this time, Epiq is not aware of any relationship that would present a disqualifying conflict of interest. Epiq currently serves, or in the past may have served, in a neutral capacity as claims, noticing, balloting, and/or solicitation agent for these parties or related parties. However, given Epiq's neutral position as Claims and Administrative Agent or administrative advisor in the listed-party's cases, or any other cases, Epiq does not view such relationships as real or potential conflicts. Further, to the best of my knowledge, any such relationship is completely unrelated to the Chapter 11 Case. Accordingly, to the best of my knowledge, Epiq and each of its employees are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code, and neither Epiq nor any of its employees hold or represent an interest adverse to the Debtor's estate related to any matter for which Epiq will be employed.

6.     To the best of my knowledge, and based upon information provided to me by the Debtor, and except as provided herein, neither Epiq nor any employee thereof, has any materially adverse connection to the Debtor, its creditors, or other relevant parties. Epiq may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as noticing, claims, balloting, or administrative advisor for another chapter 11 debtor. In addition, Epiq personnel may have relationships with some of the Debtor's creditors or other parties in interest. However, to the best of my knowledge,

such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to this Chapter 11 case. Epiq has and will continue to represent clients in matters unrelated to this Chapter 11 Case. In addition, Epiq has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in this Chapter 11 Case in matters unrelated to this Chapter 11 Case. Epiq may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.

7.      Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

8.      Epiq Systems, Inc., is a wholly owned subsidiary of Document Technologies, LLC ("*DTI*"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("*DTI Topco*"). DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("*OAC*"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("*OPE*," which together with OAC are referred to as "*OMERS*"), and funds managed by Harvest Partners, LP ("*Harvest*"), a leading private equity investment firm.

9. Neither OMERS nor Harvest are currently identified on the Potential Parties in Interest list. However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

10. Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("***Parent Board Designees***"). No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI. Further, Epiq has the following restrictions in place (collectively, the "***Barrier***"): (i) prior to the Debtor commencing this case, Epiq did not share the names or any other information identifying the Debtor with OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material nonpublic information about the Debtor to OMERS, Harvest, or the Parent Board Designees; (iii) no OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel; (iv) no OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than the Parent Board Designees).

11. Epiq has searched the names of OMERS and Harvest against the Debtor and the Potential Parties in Interest list provided by the Debtor. Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest,

to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtor and the Potential Parties in Interest.

12.     In addition, after the Petition Date, Epiq requested that both OMERS and Harvest search the name of the Debtor against OMERS' and Harvest's respective private equity investments. Based solely on the foregoing searches, Epiq has determined, to the best of its knowledge, that there are no connections. To the extent Epiq learns of any connections involving such entities and/or such investments with the Debtor, Epiq will promptly file a supplemental disclosure.

13.     Based on, among other things, the business separation between Epiq, OMERS and Harvest, and in light of the administrative nature of the services proposed to be performed by Epiq for the Debtor, Epiq believes that it does not hold or represent an interest adverse to the Debtor.

14.     Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

15.     Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this Chapter 11 Case. Epiq has represented, and will continue to represent, clients in matters unrelated to this Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to this Chapter 11 Case.

16.     Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this Chapter 11 Case. If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this Chapter 11 Case.

17.     Based on the foregoing, I believe Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge, neither Epiq nor any of its partners or employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which Epiq is to be engaged.

18.     To the extent that Epiq discovers any connection with any interested party or enters into any new relationship with any interested party Epiq will promptly supplement its disclosure to the Court.

19.     In performing the Claims and Administrative Services as described in the Application, Epiq will charge the rates set forth in the Epiq Agreement. These rates are at least as favorable as the prices Epiq charges in other cases in which the firm has been retained to perform similar services.

20.     In addition, the indemnification provisions set forth in the Epiq Agreement reflect standard and customary terms of engagement contained in Epiq's engagement letters both in and outside of bankruptcy. Based on my experience, these indemnification provisions are similar to provisions in the engagement letters of other similarly situated companies in engagements both in and outside of bankruptcy.

21.     Prior to the Petition Date, the Debtor paid to Epiq a retainer in the amount of $15,000.00. In addition, prior to the Petition Date, the Debtor made an advance payment in the

amount of $15,000, representing the anticipated costs associated with Epiq's services in connection with the initial commencement of this case. Epiq seeks to first apply the amounts received prepetition to all prepetition invoices and, thereafter, Epiq may hold such retainer under the Epiq Agreement during this Chapter 11 Case as security for the payment of fees and expenses incurred under the Epiq Agreement.

22.     If appointed as Claims and Administrative Agent, Epiq will not (a) cease providing Claims and Administrative Services during this chapter 11 case for any reason, including nonpayment, without an order of the Court or (b) undertake any legal representation of the Debtor, nor provide any advice of a legal nature, outside the scope of the duties outlined in the Application, without prior order from the Court authorizing Epiq to do so.

23.     Epiq will comply with all requests of the Clerk.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed on February 19, 2020

EPIQ CORPORATE RESTRUCTURING, LLC


By:     */s/ Emily Young*
        Emily Young
        Senior Consultant
