**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**HARRISBURG DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | (Request for Expedited Consideration) |

**DEBTOR'S <u>EMERGENCY</u> MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTOR**
**TO (A) PAY CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER**
**COMPENSATION AND (B) CONTINUE EMPLOYEE COMPENSATION AND**
**<u>BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF</u>**

The Roman Catholic Diocese of Harrisburg (the "***Debtor***") in the above-captioned chapter 11 case (the "***Chapter 11 Case***") files this motion (this "***Motion***"), pursuant to sections 105(a), 363(b), 507(a), 1107(a), and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "***Interim Order***") and **Exhibit B** (the "***Final Order***," and together with the Interim Order, the "***Proposed Orders***"): (i) authorizing the Debtor to (a) pay certain prepetition wages, benefits, and other compensation and (b) continue employee compensation and employee benefits programs; and (ii) granting related relief. In support of the Motion, the Debtor relies on and incorporates by reference the *Informational Brief of the Roman Catholic Diocese of Harrisburg* (the "***Informational Brief***") and the *Declaration of Christopher G. Linscott in Support of First Day Motions* (the "***Linscott Declaration***" and, with the Informational Brief, collectively, the "***First Day Informational Pleadings***"), and respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

4852-8463-6072.9

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Middle District of Pennsylvania. This is a core proceeding, pursuant to 28 U.S.C. § 157(b), and the Debtor consents to the entry of a final judgment or order with respect to the Motion, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On the date of this Motion (the "***Petition Date***"), the Debtor commenced this Chapter 11 Case. The Debtor is operating its business and managing its property as debtor-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case, and no committees have been appointed or designated.

4.      A description of the Debtor's history, business operations, operational structure, the reasons for commencing the Chapter 11 Case, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the First Day Informational Pleadings.

## REQUEST FOR EMERGENCY CONSIDERATION

5.      Pursuant to Local Rule 9075-1 and Bankruptcy Rule 6003, the Debtor requests emergency consideration of this Motion. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As discussed in detail below and in the First Day Informational Pleadings, any delay in granting the relief requested could hinder the Debtor's operations and cause

4852-8463-6072.9

immediate and irreparable harm. As such, the Debtor believes that emergency consideration is necessary and requests that this Motion be heard at the Debtor's first day hearing.

## THE DEBTOR'S EMPLOYEES

6.     As further set forth in the First Day Informational Pleadings, the Debtor is a nonprofit religious institution and the civil law instrumentality through which the mission of the Roman Catholic Church is administered within the Diocese of Harrisburg. In addition to providing resources, spiritual leadership, direction and support to the parishes on spiritual matters, the Debtor provides financial and certain limited "back-office" support for the parishes and other non-debtor entities (collectively, the "***Related Entities***") operating within the Debtor's territorial jurisdiction as more fully described in the First Day Informational Pleadings. The Debtor also holds and manages certain funds (including, but not limited to, funds held in trust) received via grant, gift, devise, or bequest to be used for Catholic religious, educational, or other charitable purposes.

7.     The Debtor currently employs approximately 177 employees, 13 of whom are seasonal, 49 of whom are part-time, hourly employees and 72 of whom are salaried full-time employees, and 43 of whom are clergy (the "***Employees***"). In addition to its own Employees, the Related Entities employ approximately 59 individuals (the "***Non-Debtor Employees***"). Harrisburg Catholic Administrative Services, Inc. (the "***Payroll Processor***" or "***HCAS***"), process payroll for both the Debtor's Employees as well as the Non-Debtor Employees. The Debtor and Related Entities consolidate all payroll funds into a single account (the "***Payroll Account***") in the Debtor's name. HCAS, as the Payroll Processor, then disperses payment to all Employees and Non-Debtor Employees. By centralizing the payroll processing services and maintaining a single relationship with HCAS for payment of payroll, the Debtor is able to provide a streamlined payment system

for all wages as well as administrative cost savings to the Related Entities.[2]

8.     In addition to a centralized payroll system, the Employees and Non-Debtor Employees are enrolled into consolidated benefit plans (as more fully described below) in order to take advantage of economies of scale. Similar to the payroll system described above, the Debtor and Related Entities fund all amounts due for all Employee and Non-Debtor Employee benefit plans to a deposit account maintained by the Debtor (the "***Payroll Account***") at which point HCAS administers the funds and disburses them to the appropriate third parties.

9.     The Debtor's Employees perform a variety of critical functions for the Debtor. They work in numerous ministries and other operations, providing ecclesiastical, managerial, financial, clerical, religious, and pastoral services to individuals and families living within the Debtor's territorial jurisdiction. The Employees' knowledge, skills and understanding of the Debtor's ministries, mission, business operations and relationships are essential to the success of the Debtor and this Chapter 11 Case. Without the continued service and dedication of the Employees, it will be difficult, if not impossible, to effectively implement the Debtor's chapter 11 strategy.

10.     Thus, to successfully accomplish the foregoing, minimize the personal hardship that the Employees—and ultimately, the beneficiaries of the services provided by such Employees—will suffer if prepetition employee-related obligations are not paid when due or as otherwise expected, and to maintain employee morale and a focused workforce during this critical time, the Debtor believes it is necessary and in the best interest of its estate and all stakeholders to

---

[2] In order to make payments to third parties, the Debtor funds, or causes to be funded, payments to HCAS. As part of its administrative responsibilities pursuant to certain services agreements, HCAS, in turn, makes payments to such third parties on the Debtor's behalf using such funds.

4852-8463-6072.9

4

seek the relief requested herein.

## **RELIEF REQUESTED**

11.     By this Motion, the Debtor requests entry of the Proposed Orders, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code: (a) authorizing, but not directing, the Debtor, in accordance with its ordinary business practices and in its sole discretion, to: (i) pay all prepetition employee wages, salaries and other accrued compensation; (ii) disburse prepetition Deductions and Payroll Taxes (each as defined below); (iii) make all contributions to prepetition benefit programs and continue such programs in the ordinary course of business; (iv) honor workers' compensation obligations; (v) make all payments for which prepetition payroll deductions were made; (vi) pay all processing costs and administrative expenses relating to the foregoing payments and contributions; and (vii) make all payments to third parties incident to the foregoing payments and contributions (collectively, and as described in greater detail below, the "*Employee Wages and Benefits*"); and (b) authorizing and directing applicable banks and other financial institutions to receive, process and honor all checks and electronic payment requests relating to the foregoing.

## I.     **PREPETITION EMPLOYEE WAGES, HOUSING COSTS, AND PAYROLL TAXES**

### A.     **Wages, Salaries and Other Compensation**

12.     The Debtor's aggregate monthly compensation for the Employees, including wages and salaries, is approximately $241,520. Most of the Debtor's payroll payments are made by direct deposit through the electronic transfer of funds directly to the Employees, while the

remaining payments are made via check. The Debtor's Employees are paid on a bi-weekly basis.[3]

13.      On February 12, 2020, the Debtor issued payroll to the Employees for the pay period ending January 31, 2020. Since that date and prior to the Petition Date, the Employees have continue to provide services to the Debtor and are thus entitled to receive pre-petition wages and benefits payable during that interim period prior to the Petition Date. Additionally, compensation may be due and owing as of the Petition Date because:

     (a)      some discrepancies may exist between the amounts paid and the amounts Employees or others believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees; and

     (b)      some payroll checks issued to Employees prior to the Petition Date may not have been presented for payment or cleared the banking system and, accordingly, have not yet been honored and paid as of the Petition Date.

14.      As of the Petition Date, the aggregate amount of accrued wages, salaries, overtime pay, commissions, and other compensation (excluding, without limitation, the amounts owed in connection with Deductions, Payroll Taxes, Employee Benefits, and the Debtor's Workers' Compensation Program (each as defined below)) earned prior to the Petition Date that remains unpaid to the Debtor's Employees is approximately $154,603 (the "***Unpaid Compensation***"). By this Motion, the Debtor requests authority to pay all such Unpaid Compensation to the Employees in the ordinary course of business in an amount not to exceed $175,000. The Debtor submits that no Employee is owed more than $13,650 for Unpaid Compensation or Employee Benefits (as defined below).[4]

---

[3] The Debtor employs the Payroll Processor to administer its payroll. The Payroll Processor's services are crucial to the smooth functioning of the Debtor's payroll system and, therefore, to the Debtor's operations generally. As of the Petition Date, the Debtor believes that no amount is owed to Payroll Processor. The Debtor requests authority to continue to pay Payroll Processor in the ordinary course of business as routinely done prior to the Petition Date.

[4] To the extent that the Debtor discovers that an Employee does have a section 507(a)(4) claim for Unpaid Compensation that exceeds the $13,650 cap, the Debtor, by this Motion, only seeks authority to honor such claim up

Case 1:20-bk-00599-HWV    Doc 11    Filed 02/19/20    Entered 02/19/20 14:01:24    Desc
Main Document      Page 6 of 38

### B. Bishop's Housing

15.     In the ordinary course of its business and pursuant to its obligations under Canon Law, the Debtor maintains a home on the Debtor's campus that is owned by the Roman Catholic Diocese of Harrisburg Real Estate Trust and in which the Bishop of the Diocese of Harrisburg resides. The average monthly costs to maintain this property (the "***Housing Costs***") is approximately $4,750, which includes regular maintenance, utilities, and landscaping.

### C. Prepetition Deductions and Withholdings

16.     During each applicable pay period, the Debtor routinely deducts certain amounts from the Employees' paychecks, including pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein (such as an Employee's share of health care benefits and insurance premiums) and charitable contributions (collectively, the "***Deductions***") and forwards those amounts, through HCAS, to various third-party recipients. For the pay period ending February 14, 2020, these Deductions were approximately $16,400. The Debtor believes that these Deductions were remitted to the various third party recipients prior to the Petition Date, however, in the event that such amounts have not been remitted, the Debtor seeks authority to continue to forward these prepetition Deductions, in an amount not to exceed $20,000, to the applicable third party recipients on a postpetition basis in the ordinary course of business, as routinely done prior to the Petition Date. The Debtor also seeks authority to forward and Deductions that have accrued between February 14, 2020 and the Petition Date, in an amount not to exceed $20,000, to the applicable third party recipients in the ordinary course of business.

17.     Further, the Debtor is required by law to withhold from an Employee's wages

---

to the $13,650 statutory cap. However, the Debtor reserves the right to request authority to honor any such section 507(a)(4) claims that exceed the $13,650 cap after notice and a hearing.

4852-8463-6072.9

Case 1:20-bk-00599-HWV    Doc 11    Filed 02/19/20    Entered 02/19/20 14:01:24    Desc
Main Document      Page 7 of 38

amounts related to, among other things, federal, state and local income taxes, social security and Medicare taxes (collectively, the "***Withheld Amounts***") for remittance to the appropriate taxing authorities. The Debtor must then make matching payments from its own funds for social security and Medicare taxes (the "***Employer Payroll Taxes***," and together with the Withheld Amounts, the "***Payroll Taxes***"). The Debtor's Payroll Taxes for the pay period ending February 14, 2020 was approximately $30,000. The Debtor believes that these Payroll Taxes were remitted to the various taxing authorities before the Petition Date, however, in the event that such amounts were not remitted, the Debtor seeks authority to continue to forward these prepetition Payroll Taxes, in an amount not to exceed $40,000, to the applicable taxing authorities on a postpetition basis in the ordinary course of business, as routinely done prior to the Petition Date.

18.     Between February 15, 2020 and the Petition Date, the Debtor's Employees have continued to provide services to the Debtor and are thus entitled to receive prepetition wages upon which Payroll Taxes have been withheld. As of the Petition Date, the Debtor's accrued and outstanding prepetition obligations with respect to the Payroll Taxes on those wages are approximately $10,000, which represents approximately four (4) days of accrued Payroll Taxes. The Debtor seeks authority, in its sole discretion, to continue to honor and process the prepetition obligations with respect to the Payroll Taxes on a postpetition basis, including forwarding the Payroll Taxes to the appropriate taxing authorities, in the ordinary course of business.

## II.     PREPETITION EMPLOYEE BENEFITS

19.     In the ordinary course of business, the Employees are provided with a number of employee benefits, including, but not limited to (a) health, dental, and vision insurance, (b) paid time off, and (c) group long-term disability insurance, described in greater detail below (collectively, the "***Employee Benefits***").

4852-8463-6072.9

## A. Group Health Insurance, Prescription Drug Insurance and Employee Assistance Program

20.     The Debtor offers: (i) a health insurance program (the "*Plan*") for the benefit of Debtor's Employees and the Related Entities. The Plan is administered by Highmark Blue Shield ("*Blue Shield*"); (ii) prescription drug insurance (the "*Prescription Drug Insurance*") through Express Scripts; and (iii) access to an employee assistance program (the "*Employee Assistance Program*") through Integrated Behavioral Health ("*IBH*").

21.      By covering their employees under a single plan, the Debtor the Related Entities benefit from significant cost savings as a result of the pooled risk and allocation of the Plan, Prescription Drug Insurance, and Employee Assistance Program. The Debtor believes that a health insurance plan, prescription drug plan, and employee assistance program for most of these entities alone would be prohibitively expensive (and possibly unavailable), due to the small number of employees that would be covered. Historically, premiums collected from the Parish Corporations and Related Entities have covered the cost of claims made by their employees.

22.     The premium cost of the Plan, Prescription Drug Insurance, and Employee Assistance Program is funded in part by the Debtor and in part through Employee paycheck deductions. Employees who work thirty (30) or more hours per week are eligible to participate in the Plan.

23.     HCAS deducts the premium payments from the Employee's payroll and remits the payments to Blue Shield on behalf of the Debtor and Employees. As of the Petition Date, the Debtor estimates that approximately $5,000 has been withheld from its Employees but is yet to be remitted to Blue Shield, Express Scripts, and IBH.

24.     By this Motion, the Debtor seeks authority to (a) continue to provide the Plan,

Prescription Drug Insurance, and Employee Assistance Program for the Employees and the employees the Related Entities in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay any claims and administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date.

**B.    Health Savings Account**

25.    The Debtor offers a health savings account program (the "***HSA***") for the benefit of Debtor's Employees and the Related Entities. The HSA is administered by HCAS.

26.    The HSA allows eligible Employees to contribute tax-deferred wages towards the future cost of healthcare expenses. The Debtor deducts the Employees' contributions from the Employee's payroll and remits the contributions to HCAS on behalf of its Employees. As of the Petition Date, the Debtor estimates that approximately $2,200 has been withheld from its Employees but is yet to be remitted to HCAS.

27.    By this Motion, the Debtor seeks authority to (a) continue to provide the HSA for the Employees and the employees the Related Entities in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay any claims and administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date.

**C.    Dental Insurance**

28.    The Employees and the employees of the Related Entities are provided with dental insurance (the "***Dental Insurance***") through United Concordia. Generally, employees working thirty (30) hours or more per week are automatically enrolled in the Dental Insurance program at no cost to the employee. The Dental Insurance provides coverage for preventative and basic dental

services.

29.     By covering Employees and Non-Debtor Employees under a single plan, the Debtor and the Related Entities benefit from significant cost savings as a result of the pooled risk and the allocation with the Dental Insurance program. The Debtor believes that a dental insurance plan for most of these entities alone would be prohibitively expensive and possible unavailable due to the small number of employees that would be covered.

30.     By this Motion, the Debtor seeks authority to (a) continue to provide the Dental Insurance for the Employees, in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date, in an amount not to exceed $2,000.

### D.     <u>Vision Insurance</u>

31.     The Employees and the employees of the Related Entities are provided with vision insurance (the "*Vision Insurance*") through National Vision Administrators ("*NVA*"). Generally, employees working thirty (30) hours or more a week are automatically enrolled in the Vision Insurance program at no cost to the employee. The Vision Insurance provides coverage for examinations, frames, lens, and contact lenses.

32.     By covering Employees and Non-Debtor Employees under a single plan, the Debtor and the Related Entities benefit from significant cost savings as a result of the pooled risk and the allocation with the Vision Insurance program. The Debtor believes that a dental insurance plan for most of these entities alone would be prohibitively expensive and possible unavailable due to the small number of employees that would be covered.

33.     By this Motion, the Debtor seeks authority to (a) continue to provide the Vision

4852-8463-6072.9

Insurance for the Employees, in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date, in an amount not to exceed $300.

**E.    Life Insurance**

34.    The Employees and the employees of the Related Entities are provided with term life insurance (the "***Term Life Insurance***") through Principal Life Insurance Company, as well as universal life insurance (the "***Universal Life Insurance***" and together with the Term Life Insurance, the "***Life Insurance Programs***") through Trustmark Insurance Company. Generally, employees working thirty (30) hours or more a week are automatically enrolled in the Life Insurance Programs at no cost to the employee. For the fiscal year ended in 2019, the Debtor's expense for Life Insurance Programs was $11,657.

35.    By covering Employees and Non-Debtor Employees under a single plan, the Debtor and the Related Entities benefit from significant cost savings as a result of the pooled risk and the allocation with the Life Insurance Programs. The Debtor believes that a life insurance plan for most of these entities alone would be prohibitively expensive and possible unavailable due to the small number of employees that would be covered.

36.    By this Motion, the Debtor seeks authority to (a) continue to provide the Life Insurance Programs for the Employees and the employees of the Related Entities, in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date, in an amount not to exceed $1,000.

Case 1:20-bk-00599-HWV    Doc 11    Filed 02/19/20    Entered 02/19/20 14:01:24    Desc
Main Document      Page 12 of 38

### F.      Long-Term Disability and Accident Insurance

37.      The Employees and the employees of the Related Entities are provided with group long-term disability insurance (the "***Group Long-Term Disability Insurance***") through Trustmark Insurance Company. Generally, employees working thirty (30) hours or more a week are automatically enrolled in the Group Long-Term Disability Insurance program at no cost to the employee. The Group Long-Term Disability Insurance is designed to replace an employee's take-home pay in the event that a disability due to accident or sickness prevents an employee from earning a salary for an extended period of time. The Group Long-Term Disability Insurance is 100% Employee funded.

38.      The Employees and the employees of the Related Entities are also provided with accident insurance (the "***Accident Insurance***") through Chubb. Generally, employees working thirty (30) hours or more a week are automatically enrolled in the Accident Insurance program at no cost to the employee. The Accident Insurance is designed to provide cash assistance that help pay for covered treatments required due to injury. The Accident Insurance is 100% Employee funded.

39.      By covering Employees and Non-Debtor Employees under a single plan, the Debtor and the Related Entities benefit from significant cost savings as a result of the pooled risk and the allocation with the Group Long-Term Disability Insurance and Accident Insurance programs. The Debtor believes that a long-term disability insurance plan or accident insurance plan for most of these entities alone would be prohibitively expensive and possible unavailable due to the small number of employees that would be covered. As of the Petition Date, HCAS, on behalf of the Debtor, has withheld approximately $3,000 for the payment of Group Long-Term Disability Insurance and Accident Insurance.

4852-8463-6072.9

40.     By this Motion, the Debtor seeks authority to (a) continue to provide the Group Long-Term Disability Insurance and Accident Insurance for the Employees and the employees of the Related Entities, in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date, in an amount not to exceed $3,000.

**G.     401(k)**

41.     The Debtor offers a 401(k) program (the "***401(k) Plan***") for the benefit of Debtor's Employees and the Related Entities. The 401(k) Plan is administered by Fidelity.

42.     The 401(k) Plan allows eligible Employees to contribute tax-deferred wages towards retirement. The Debtor makes contributions to eligible Employee's 401(k) Plans equivalent to 4% of the Employee's annual wages. The Debtor deducts the Employees' contributions from the Employee's payroll and remits the contributions to Fidelity on behalf of its Employees. As of the Petition Date, the Debtor estimates that approximately $10,000 has been withheld from its Employees but is yet to be remitted to Fidelity.

43.     By this Motion, the Debtor seeks authority to (a) continue to provide the 401(k) Plan for the Employees and the employees the Related Entities in the ordinary course of business, (b) continue making all contributions to such programs, (c) continue to pay any claims and administrative fees related thereto, and (d) pay any and all such amounts to the extent that they remain unpaid on the Petition Date.

**I.     Leave Pay**

44.     The Employees are provided with paid time off ("***PTO***" or "***Leave Pay***"). PTO encompasses holidays, vacation, sick leave, personal leave, court duty, bereavement, military

Case 1:20-bk-00599-HWV    Doc 11    Filed 02/19/20    Entered 02/19/20 14:01:24    Desc
Main Document    Page 14 of 38

leave, and office closure.

45.     The Employees are provided with paid holidays. Employees are entitled to approximately sixteen (16) paid holidays each year.

46.     The Debtor's vacation pay policy is based primarily on length of service. An Employee must have ninety (90) days' continuous service as a regular salaried employee before being entitled to use paid vacation, although Employees begin accruing PTO immediately. In most instances, an Employee is entitled to receive compensation for unused vacation days upon termination.

47.     The Debtor's sick leave policy for full-time employees is accumulated at a rate of 5.5 hours per pay period. Sick leave is cumulative to 640 working hours. For regular part-time employees, sick leave is calculated on a prorated basis. Unused sick days are not paid out upon an Employee's resignation or termination.

48.     The Employees are provided with one (1) paid personal days per calendar year. Personal days taken are deducted from accrued sick time and must be approved in advance. Additionally, the Employees are permitted to utilize their accrued PTO for other reasons including court duty, bereavement, military leave, and office closures.

49.     The cost to the Debtor for the Leave Pay is included in gross payroll. Accordingly, and with the exception of amounts owing in connection with accrued but unused vacation, all prepetition amounts related to the Leave Pay should be included in the aggregate amount of Unpaid Compensation.

50.     By this Motion, the Debtor requests authority to continue to honor its Leave Pay policies in the ordinary course of business, and to honor and pay, in its sole discretion, any and all prepetition amounts related thereto subject to the statutory cap set forth in section 507(a)(4) of the

Bankruptcy Code.

## III.  WORKERS' COMPENSATION PROGRAM

51.     The Debtor utilizes a self-insured workers' compensation program as well as excess coverage through Catholic Mutual Relief Society of America (the "***Workers' Compensation Program***") for itself and the Related Entities. The Debtor's average annual claims under the Workers' Compensation Program are approximately $22,700 per year. For the activity period ending February 14, 2020, the total amount paid for claims was approximately $2,000.

52.     By covering their employees under a single workers' compensation program, the Debtor and the Related Entities benefit from significant cost savings as a result of the pooled risk and the allocation of plan overhead. Indeed, obtaining workers' compensation insurance for any one of these entities alone would be more expensive due to the small number of employees that would be covered.

53.     By this Motion, the Debtor seeks authority, to be exercised in its sole discretion, to continue to maintain its Workers' Compensation Program in the ordinary course of business and to pay any and all prepetition amounts related thereto including, without limitation, any payments for workers' compensation claims, deductibles and fees owed for administrative costs, and other amounts required in connection with the Workers' Compensation Program, as such amounts become due in the ordinary course of the Debtor's business.

## IV.  EMPLOYEE BENEFITS CONSULTING SERVICES

54.     Pursuant to that certain Employee Benefits Consulting Services Agreement (the "***Agreement***") dated July 1, 2017, by and between the Debtor and McConkey Benefits & Financial Services, LLC ("***McConkey***"), McConkey provides assistance with strategic benefit planning, design, funding, enrollment, administration, and communication with respect to the Employee

4852-8463-6072.9

Benefits. The services provided by McConkey are for the benefit of both the Debtor and its Employees as well as the benefit of the Related Entities and the Non-Debtor Employees. Through the services provided by McConkey pursuant to the Agreement, the Debtor and its Employees, as well as the Related Entities and the Non-Debtor Employees, are able to enroll in more cost effective Employee Benefits than any one of these entities and its employees would be afforded on their own.

57. As compensation for its services under the Agreement, McConkey is paid $156,000 annually, billed to the Debtor in monthly installments. HCAS collects the Debtor's and each Related Entities pro rata share of the fees owed to McConkey through the collection of premium payments for the Plan, Prescription Insurance, and Employee Assistance Program. HCAS made a payment to McConkey in the amount of $13,000 on January 2, 2020.

56. By this Motion, the Debtor seeks authority, to be exercised in its sole discretion, to continue to maintain the Agreement in the ordinary course of business and to pay any and all prepetition amounts related thereto, as such amounts become due in the ordinary course of the Debtor's business.

## V.      REQUEST FOR AUTHORITY FOR BANKS TO HONOR AND/OR REISSUE CHECKS

57. The Debtor also requests that the Court authorize the Debtor's banks and financial institutions (the "***Banks***"), when requested by the Debtor in the Debtor's sole discretion, to process, honor and pay any and all checks or electronic fund transfers drawn on the Debtor's bank accounts to pay all prepetition obligations described herein, whether such checks or other requests were submitted prior to or after the Petition Date. A listing of the Debtor's relevant/applicable accounts is attached to the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing*

*Continued Use of Existing Cash Management System and Bank Accounts; (II) Extending the Time to Comply with, or Seek a Waiver of, Certain United States Trustee Requirements and Section 345(b) of the Bankruptcy Code; (III) Authorizing the Debtor to Continue Existing Deposit Practices; (IV) Authorizing the Debtor to Maintain Investment Practices; and (V) Granting Related Relief* filed contemporaneously herewith.

58.     Accordingly, by this Motion, the Debtor seeks (a) authorization for, and/or ratification of, its Banks' honoring of prepetition payroll and employee benefit checks and transfers on or after the Petition Date, (b) authorization for its Banks to process and honor all other checks issued for payments approved by this Motion, and (c) authorization for the Debtor to reissue checks for payments approved by this Motion where the applicable check is dishonored postpetition.

## BASIS FOR RELIEF REQUESTED

### I.     PAYMENT OF THE PREPETITION EMPLOYEE WAGES AND BENEFITS IS NECESSARY AND APPROPRIATE UNDER THE BANKRUPTCY CODE

59.     Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See, e.g., In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine . . . permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid") (citations and internal quotations omitted); *In re Chateaugay Corp.,* 80 B.R. 279, 285–87 (S.D.N.Y. 1987) (finding that a court's equitable powers include the authority to authorize a debtor to pay prepetition debts). In

authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have routinely approved orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business.") (citations omitted); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

60.     The Debtor believes that payment of the Employee Wages and Benefits described in this Motion is critical to the ongoing operation of the Debtor's business. If the Employee Wages and Benefits are not paid, the Debtor will risk tangible and intangible loss of the value of the Debtor's business, including, among other things, losses relating to the cost of replacing Employees who seek alternative employment and losses related to the disruption of, and lower productivity in, the Debtor's business operations resulting from low employee morale and high turnover.

A.     **A Significant Portion of the Employee Wages and Benefits are Entitled to Priority Treatment.**

61.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the unpaid Employee Wages and Benefits to priority treatment. To confirm a chapter 11 plan, the Debtor must pay priority claims in full. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of

4852-8463-6072.9

certain allowed unsecured claims for (a) wages, salaries, commissions, including vacation, severance and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus, granting the vast majority of the relief sought in this Motion only affects the timing of payments to Employees, and does not negatively impact recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of Employee Wages and Benefits at this time enhances value for the benefit of the creditors and all interested parties.

62.     Amounts that are paid on account of priority claims for Employee Wages and Benefits would not otherwise be available for distribution to unsecured creditors. Therefore, no prejudice would be caused to the Debtor's unsecured creditors, by permitting priority obligations to be satisfied in the ordinary course of business during the Chapter 11 Case rather than at the conclusion of the case pursuant to a plan of reorganization.

### B.     Payment of Certain Employee Wages and Benefits is Required by Law.

63.     The Debtor also seeks authority to pay the Deductions and Payroll Taxes to the appropriate entities. These amounts principally represent the Employees' earnings that governments, the Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain deductions and withheld taxes are not property of the Debtor's estate, because the Debtor has withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541; *Begier v. Internal Revenue Serv.,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found). Because the Deductions and Payroll

4852-8463-6072.9

20

Taxes are not property of the Debtor's estate, the Debtor requests that the Court authorize the Debtor to transmit these amounts to the appropriate parties in the ordinary course of business.

### C. The Court May Authorize Payment of the Employee Wages and Benefits Pursuant to Section 363 of the Bankruptcy Code.

64.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code). In addition, section 363(c) allows a debtor in possession to enter into transactions involving property of the estate in the ordinary course of business without an order of the court. *See, e.g., Armstrong World Indus., Inc. v. James A. Phillips, Inc.,* 29 B.R. 391, 395 n.2 (S.D.N.Y. 1983) ("Insofar as transactions are actually in the ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not require Bankruptcy Court approval.").

65.     The majority of the Debtor's Employees rely exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and maintain their health and well-being. Consequently, these Employees will be exposed to significant financial difficulties, if the Debtor is not permitted to honor obligations for unpaid Employee Wages and Benefits. Moreover, if the Debtor is unable to satisfy such obligations, Employee morale and loyalty would be jeopardized at a time when Employee support is critical. Furthermore, if the Court does not authorize the Debtor to honor the various Employee Benefit obligations, the Employees'

Case 1:20-bk-00599-HWV   Doc 11   Filed 02/19/20   Entered 02/19/20 14:01:24   Desc
Main Document      Page 21 of 38

health coverage could be threatened, potentially burdening individual Employees with the costs of health care. At minimum, the loss of health care coverage, or uncertainty regarding coverage, would result in considerable anxiety for Employees at a time when the Debtor needs their Employees to perform their jobs at peak efficiency.

66. For all of the foregoing reasons, a sound business purpose exists to pay the Employee Wages and Benefits. In the absence of such payments, the Debtor believes that Employees may seek alternative employment opportunities. Such a development would deplete the Debtor's workforce, hinder the Debtor's ability to meet obligations, and likely diminish creditors' confidence in the Debtor. Moreover, the loss of valuable Employees and the recruiting efforts that would be required to replace such Employees would be a massive and costly distraction at a time when the Debtor should be focusing on successfully exiting this Chapter 11 Case. Accordingly, the Debtor must be able to pursue all reasonable measures to retain the Employees by, among other things, continuing to honor all wages, benefits, and related obligations, including those that accrued prior to the Petition Date.

67. In addition, because the Debtor pays the Employee Wages and Benefits in the ordinary course of business, the Debtor submits that Court approval to continue existing policies, programs, and related payments postpetition is not necessary, because of the authority granted by section 363(c) of the Bankruptcy Code. Nonetheless, in an abundance of caution, the Debtor requests that the Court grant the relief requested in this Motion and enter an order authorizing payment of the Employee Wages and Benefits, as consistent with the Debtor's compensation and other benefit policies and plans, and to permit, but not require, the Debtor, in its discretion, to continue the Debtor's practices, programs, policies, and plans for Employees as those practices, programs, policies, and plans were in effect as of the Petition Date, as may be modified, terminated,

4852-8463-6072.9

amended, or supplemented from time to time hereafter.

**D.      The Court May Authorize Payment of the Employee Wages and Benefits Pursuant to Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity.**

68.      The Debtor's proposed payment of the Employee Wages and Benefits should also be authorized, pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court may use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs,* 98 B.R. at 175. "Under [section] 105 the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs,* 98 B.R. at *177); accord In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization.'") (quoting *In re Fin. News Network, Inc.,* 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process."); *In re Chateaugay Corp.,* 80 B.R. at 279 (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

69.      The "doctrine of necessity" or the "necessity of payment" doctrine functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and

4852-8463-6072.9

further supports the relief requested in this Motion. *See In re Lehigh & New England Ry. Co., 657* at 581 (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of debtor); *In re Just for Feet,* 242 B.R. at 824 ("[C]ourts have used their equitable power under section 105(a) of the Code to authorize the payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."). The doctrine is frequently invoked early in a chapter 11 case.

70.     Taken together, the nature of the Employee Wages and Benefits, the substantial harm to the Debtor's operations that would be caused if those obligations were not honored, the related potential for loss of value in the Debtor's estate, and the fact that a significant portion of the obligations in question relates either to priority wage claims or to funds held in trust for the benefit of Employees, lead to the Debtor's conclusion that the Employee Wages and Benefits fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

## II.     THE COURT SHOULD AUTHORIZE THE DEBTOR'S BANKS TO HONOR AND PAY CHECKS AND MAKE OTHER TRANSFERS TO PAY THE EMPLOYEE WAGES AND BENEFITS

71.     In connection with the relief requested in this Motion, the Debtor requests that the Court authorize: (a) the Banks to receive, process, honor, and pay all checks and transfers issued by the Debtor in connection with payment of the claims the Debtor requests authority to pay in this Motion, without regard to whether any check or transfer was issued before or after the Petition Date; (b) the Banks to rely on the representations of the Debtor with respect to whether any check or transfer issued or made by the Debtor before the Petition Date should be honored pursuant to this Motion, and that the its Banks shall not have any liability to any party for relying on such representations by the Debtor; and (c) the Debtor to issue replacement checks or transfers,

4852-8463-6072.9

24

to the extent any check or transfer in relation to the claims the Debtor requests authority to pay in this Motion is dishonored or rejected by the Banks.

### REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

72.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003(b).

73.     The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth in this Motion, Bankruptcy Rule 6003 has been satisfied and the relief requested in this Motion should be granted.

74.     Courts have routinely approved the payment of prepetition claims of employee wages, salaries, expenses, and benefits in various chapter 11 cases. *See, e.g., In re the Archdiocese of Saint Paul and Minneapolis*, Case No. 15-30125 (Bankr. D. Minn. 2015) [Dkt. No. 47] (order authorizing the debtors to pay prepetition wages and compensation and to maintain and continue benefits in the ordinary course); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del. 2009) [Dkt. No. 4] (same); *see generally, In re Advanced Elecs., Inc.,* 107 B.R. 503 (Bankr. M.D. Pa. 1989) (authorizing the payment of wages for employees operating in the ordinary course of business).

### REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

75.     To implement the foregoing immediately, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtor seeks a waiver of any stay of the effectiveness of the order

4852-8463-6072.9

Case 1:20-bk-00599-HWV    Doc 11    Filed 02/19/20    Entered 02/19/20 14:01:24    Desc
Main Document    Page 25 of 38

approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the immediate payment of any amounts owing to or on account of Employees is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

76. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtor to pay such claims.

## NOTICE

77. The Debtor has provided notice of the filing of the Motion to: (i) the Office of the United States Trustee for the Middle District of Pennsylvania; (ii) the Debtor's 20 largest unsecured creditors; (iii) the Banks; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "***Notice Parties***"). Notice of this Motion and any order entered in connection with this Motion will be served on all parties required by Local Rule 9013-1. Due to the urgency of the circumstances surrounding this Motion and the nature of relief sought in it, the Debtor respectfully submits that no further notice of this Motion is required.

4852-8463-6072.9

26

*(Remainder of this page left intentionally blank)*

4852-8463-6072.9

WHEREFORE, the Debtor respectfully requests entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: February 19, 2020
Nashville, Tennessee

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

/s/ Blake D. Roth
Blake D. Roth (State Bar No. 306951)
Tyler N. Layne (*pro hac vice* admission pending)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:    (615) 244-6380
Facsimile:    (615) 244-6804
Email:         blake.roth@wallerlaw.com
               tyler.layne@wallerlaw.com

-and-

KLEINBARD, LLC

Matthew H. Haverstick (State Bar No. 85072)
Joshua J. Voss (State Bar No. 306853)
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, Pennsylvania 19103
Telephone:    (215) 568-2000
Facsimile:    (215) 568-0140
Email:         mhaverstick@kleinbard.com
               jvoss@kleinbard.com

*Proposed Attorneys for the Debtor and Debtor In Possession*

4852-8463-6072.9

**Exhibit A**

*Proposed Interim Order*

4852-8463-6072.9

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

**INTERIM ORDER: (I) AUTHORIZING THE DEBTOR TO (A) PAY
CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION
AND (B) CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE
BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "***Motion***")[2] for entry of an interim order (this

"***Interim Order***") (i) authorizing, but not directing, the Debtor, in accordance with its ordinary

business practices and in its sole discretion, to (a) pay certain prepetition wages, benefits, and other

compensation and (b) continue employee compensation and employee benefits programs, and (ii)

granting related relief, all as more fully set forth in the Motion; and the Court having found that it

has jurisdiction to consider the Motion and the relief requested in the Motion, pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the Middle District of Pennsylvania; and upon consideration of the First Day

Informational Pleadings; and the Court having found that consideration of the Motion and the relief

requested is a core proceeding, pursuant to 28 U.S.C. § 157(b); and the Court having found that

venue of this proceeding in this District is proper, pursuant to 28 U.S.C. §§ 1408 and 1409; and it

appearing that notice of the Motion is sufficient under the circumstances; and the Court having

reviewed the Motion and the First Day Informational Pleadings and having considered the

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.
[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

statements of counsel and the evidence adduced with respect to the Motion at the interim hearing; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted in this Interim Order; and any objections to the requested relief having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on an interim basis as set forth in this Interim Order.

2.     The Debtor is authorized to pay the Employee Wages and Benefits and/or honor the Debtor's wage and benefit obligations in accordance with the Debtor's stated policies and in the ordinary course of business, including amounts owing as of the Petition Date on account of: (a) the Payroll Processor; (b) Unpaid Compensation; (c) Deductions and Payroll Taxes; (d) the Employee Benefits; and (e) the Workers' Compensation Program, to the extent such payments do not violate the priority cap in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, as set forth in the Motion and as provided in this Interim Order.

3.     Except as otherwise provided in this Interim Order, the Debtor is authorized to make payments on account of Employee Wages and Benefits, in accordance with the Debtor's ordinary course of business and stated policies, as set forth in the Motion.

4.     The Debtor is authorized to make payments to applicable third parties from the Deductions and Payroll Taxes, in accordance with the Debtor's ordinary course of business and stated policies, as set forth in the Motion.

5.     The Debtor is authorized to continue to honor Employee Benefits, make necessary contributions to such programs, and pay any unpaid premiums, claims, or amounts owed in

connection with Employee Benefits as of the Petition Date (including amounts owed to McConkey pursuant to the Agreement), in accordance with the Debtor's ordinary course of business and stated policies as set forth in the Motion.

6.     The banks and financial institutions (including the Payroll Processor) on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, including all checks issued prepetition and presented for payment postpetition, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

7.     The Debtor is authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Interim Order and is not cleared by the applicable bank or other financial institution.

8.     Nothing in the Motion or this Interim Order, including the Debtor's payment of any claims pursuant to this Interim Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtor, or a waiver of the Debtor's right to dispute any claim, or an approval, assumption, or rejection of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

9.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Interim Order, in accordance with the Motion.

10.     The requirements of Bankruptcy Rules 6003(b) and 6004(a) are satisfied by the contents of the Motion or otherwise deemed waived.

4852-8463-6072.9

3

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

11.     A final hearing (the "***Final Hearing***") to consider the relief requested in the Motion on a final basis shall be held on_____, 20__, at ___:___ __.m. (prevailing Eastern Time) and any objections to entry of such order shall be filed on or before _____, 2020.

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

*Proposed Final Order*

4852-8463-6072.9

|  |  |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

## FINAL ORDER: (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION WAGES, BENEFITS, AND OTHER COMPENSATION AND (B) CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**_Motion_**")[2] for entry of a final order (this "**_Final Order_**") (i) authorizing, but not directing, the Debtor, in accordance with its ordinary business practices and in its sole discretion, to (a) pay certain prepetition wages, benefits, and other compensation and (b) continue employee compensation and employee benefits programs, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein, pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference_ from the United States District Court for the Middle District of Pennsylvania; and upon consideration of the First Day Informational Pleadings; and the Court having found that consideration of the Motion and the relief requested is a core proceeding, pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of this proceeding in this District is proper, pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion is sufficient under the circumstances; and the Court having reviewed the Motion and the First Day Informational Pleadings and having considered the statements of counsel

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

and the evidence adduced with respect to the Motion at the interim hearing and final hearing; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted in this Final Order; and any objections to the requested relief having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on a final basis as set forth in this Final Order.

2.     The Debtor is authorized to pay the Employee Wages and Benefits and/or honor the Debtor's wage and benefit obligations in accordance with the Debtor's stated policies and in the ordinary course of businesses, including amounts owing as of the Petition Date on account of: (a) the Payroll Processor; (b) Unpaid Compensation; (c) Deductions and Payroll Taxes; (d) the Employee Benefits; and (e) the Workers' Compensation Program, as set forth in the Motion and as provided in this Final Order.

3.     Except as otherwise provided in this Final Order, the Debtor is authorized to make payments on account of Employee Wages and Benefits, in accordance with the Debtor's ordinary course of business and stated policies and as set forth in the Motion.

4.     The Debtor is authorized to make payments to applicable third parties from the Deductions and Payroll Taxes, in accordance with the Debtor's ordinary course of business and stated policies and as set forth in the Motion.

5.     The Debtor is authorized to continue to honor Employee Benefits, make necessary contributions to such programs, and pay any unpaid premiums, claims, or amounts owed in connection therewith as of the Petition Date (including amounts owed to McConkey pursuant to

4852-8463-6072.9

2

the Agreement), in accordance with the Debtor's ordinary course of business and stated policies and as set forth in the Motion.

6.     The banks and financial institutions (including the Payroll Processor) on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved in this Final Order are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, including all checks issued prepetition and presented for payment postpetition, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order.

7.     The Debtor is authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Final Order and is not cleared by the applicable bank or other financial institution.

8.     Nothing in the Motion or this Final Order, including the Debtor's payment of any claims pursuant to this Final Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtor, or a waiver of the Debtor's right to dispute any claim, or an approval, assumption, or rejection of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

9.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Final Order, in accordance with the Motion.

10.    The requirements of Bankruptcy Rules 6003(b) and 6004(a) are satisfied by the contents of the Motion or otherwise deemed waived.

11.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this shall be immediately effective and enforceable upon its entry.

12.     The Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation, enforcement and/or interpretation of this Final Order.