# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### HARRISBURG DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER APPROVING THE EMPLOYMENT AND RETENTION OF WALLER LANSDEN DORTCH & DAVIS, LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

The Roman Catholic Diocese of Harrisburg, the debtor and debtor in possession (the "*Debtor*"), by and through its undersigned proposed counsel, files this application for entry of an order, substantially in the form attached to this application as **Exhibit A**, authorizing the Debtor to retain and employ Waller Lansden Dortch & Davis, LLP ("*Waller*") as its attorneys effective as of the Petition Date (as defined below). In support of this application, the Debtor submits the declaration of Blake D. Roth, a partner of Waller (the "*Roth Declaration*"), which is attached to this application as **Exhibit B**, and the declaration of Very Reverend David L. Danneker, Ph.D., Vicar General and Moderator of the Curia for the Debtor (the "*Danneker Declaration*"), which is attached to this application as **Exhibit C**. In further support of this application, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

4816-5144-5426.4

the Middle District of Pennsylvania. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

3.     On February 19, 2020 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief in this Court, pursuant to chapter 11 of the Bankruptcy Code, commencing this case (the "***Chapter 11 Case***").

4.     The Debtor continues to operate its business as a debtor in possession, pursuant to sections 1107(a) and 1008 of the Bankruptcy Code.

5.     No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case, nor have any committees been appointed or designated.

6.     A description of the Debtor's business, the reasons for commencing this Chapter 11 Case, the relief sought from this Court, and the facts and circumstances supporting this motion are set forth in the *Informational Brie of the Roman Catholic Diocese of Harrisburg* (the "***Informational Brief***") and the *Declaration of Christopher G. Linscott in Support of First Day Motions* (the "***Linscott Declaration***" and, with the Informational Brief, collectively, the "***First Day Informational Pleadings***").

### RELIEF REQUESTED

7.     By this application, the Debtor seeks entry of an order authorizing the retention and employment of Waller as its attorneys, in accordance with the terms and conditions set forth in that certain engagement letter between the Debtor and Waller, effective as of July 15, 2019 (the "***Engagement Letter***"), a copy of which is attached as **Exhibit 1-B** to the Roth Declaration.

4816-5144-5426.4

## BASIS FOR RELIEF

8.      The bases for the relief requested in this application are sections 327(a) and 330 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014(a) and 2016 of the Bankruptcy Rules, and Local Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules (the "***Local Rules***") for the United States Bankruptcy Court for the Middle District of Pennsylvania.

## WALLER'S QUALIFICATIONS

9.      Waller is well qualified to represent the Debtor in this Chapter 11 Case. Waller is a national firm with over 235 attorneys in offices located in Austin, Nashville, Chattanooga, Memphis, and Birmingham. Waller has extensive expertise and experience in virtually all aspects of the law that may arise in this Chapter 11 Case, including substantial expertise in the fields of bankruptcy and restructuring, corporate, employee benefits, environmental, finance, intellectual property, labor and employment, litigation, real estate, securities, and tax.

10.      The attorneys in Waller's Finance and Restructuring Group[2] have significant experience representing debtors in large and complex cases under the Bankruptcy Code. In past years, Waller has represented debtors in the chapter 11 cases of: (a) *In re Walker County Hospital Corporation*, Case No. 19-36300 (Bankr. S.D. Tex.); (b) *In re Promise Healthcare Group, Inc.*, Case No. 18-12491 (Bankr. D. Del.); (c) *In re Little River Healthcare Holdings, LLC,* et al., Case No. 18-60526 (Bankr. W.D. Tex.); (d) *In re Stone Panels, Inc. and Stone Panels Holding Corporation*, No. 16-32856 (Bankr. N.D. Tex); (e) *In re Oxane Materials, Inc.*, No. 15-32940 (Bankr. S.D. Tex.); (f) *In re Ranch 967 LLC*, No. 15-10314 (Bankr. W.D. Tex.); (g) *In re Blue Matrix Labs, LLC*, No. 15-52977 (Bankr. W.D. Tex.); (h) *In re Adilace Holdings, Inc. f/k/a Image Trends, Inc.*, No. 14-11583 (Bankr. W.D. Tex.); (i) *In re Advanced Living Technologies, Inc.*, No.

---

[2] Waller's Austin attorneys previously worked for the firm of Taube Summers Harrison Taylor Meinzer Brown, LLP (f/k/a Hohmann, Taube & Summers, LLP ) before joining Waller in February 2016.

4816-5144-5426.4

13-10313 (Bankr. W.D. Tex.); and (j) *In re Church Street Health Management, LLC*, No. 12-01573 (Bankr. M.D. Tenn.).

11.     Given Waller's breadth of experience in large bankruptcy matters as well as Waller's expansive areas of expertise, Waller is well qualified to represent the Debtor in this Chapter 11 Case.

12.     In addition to the foregoing, Waller has been providing the Debtor with a wide array of legal services in connection with the Debtor's restructuring and reorganization efforts.

13.     Waller's professionals have worked closely with the Debtor's management and other professionals with regard to these matters and has become well-acquainted with the Debtor's corporate history, structure, business operations, and the background that has lead the Debtor to file this Chapter 11 Case.

14.     As a result, Waller has developed relevant experience and expertise regarding the Debtor that will assist Waller in providing effective and efficient services in this Chapter 11 Case.

## <u>SERVICES TO BE PROVIDED</u>

15.     Subject to further order of this Court, and consistent with the Engagement Letter, the Debtor requests the retention and employment of Waller to render the following legal services:

a.     advising the Debtor with respect to its powers and duties as a debtor in possession in the continued management and operation of the Debtor's business and property;

b.     advising and consulting on the conduct of this Chapter 11 Case, including all of the legal and administrative requirements of operating in a case under chapter 11 of the Bankruptcy Code;

c.     attending meetings and negotiating with representatives of creditors and other parties in interest;

d.     taking all necessary actions to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor, and representing the Debtor in negotiations

concerning litigation in which the Debtor is involved, including objections to claims filed against the Debtor's estate;

e.  preparing pleadings in connection with this Chapter 11 Case, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtor's estate;

f.  representing the Debtor in connection with obtaining authority to continue using cash collateral and obtaining postpetition financing;

g.  advising the Debtor in connection with any potential sale of assets;

h.  appearing before this Court and any appellate courts to represent the interests of the Debtor's estate;

i.  advising the Debtor regarding tax matters;

j.  taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related to the foregoing; and

k.  performing all other necessary legal services for the Debtor, in connection with the prosecution of this Chapter 11 Case, including: (i) analyzing the Debtor's leases and contracts and the assumption and assignment or rejection of same; (ii) analyzing the validity of liens against the Debtor or its estate; and (iii) advising the Debtor on corporate and litigation matters.

## PROFESSIONAL COMPENSATION

16.     Waller intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with this Chapter 11 Case, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and Local Rules, and any other applicable procedures and orders of the Court.

17.     The hourly rates and corresponding rate structure Waller will use in this Chapter 11 Case are the same as the hourly rates and corresponding rate structure that Waller uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.

18.     These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

19.     Waller operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

20.     Waller's currently hourly rates for the 2020 calendar year (the "***Current Hourly Rates***") for matters related to the Debtor's restructuring and this Chapter 11 Case are as follows:

| Professional Level | Hourly Rate Range |
|---|---|
| Partner | $395 - $765 |
| Sr. Counsel | $475 - $665 |
| Counsel | $385 - $610 |
| Sr. Associate | $335 - $410 |
| Associate | $280 - $335 |
| Staff Attorney | $210 - $350 |
| Paralegal | $180 - $270 |
| Staff | $20 - $285 |

21.     Waller's hourly rates are set at a level designed to compensate Waller fairly for the work of its professionals and paraprofessionals and to cover fixed and routine expenses. The hourly rates charged by Waller vary with experience and seniority of the individuals providing services. The hourly rates are subject to periodic adjustments, to reflect economic and other conditions.

22.     The above hourly rates are consistent with the rates Waller charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

23.     The rate structure provided by Waller is appropriate and not significantly different from (a) the rates Waller charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work similar to the work Waller proposed to perform in this Chapter 11 Case.

4816-5144-5426.4

6

24.     In addition, Waller maintains a policy of charging its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for the representation of that particular client.

25.     Waller only charges its clients the amount actually incurred by Waller in connection with such items.

26.     Examples of items Waller charges to clients include, but are not limited to, postage (including overnight mail), transportation, overtime expenses, computer assisted legal research, photocopies, and travel expenses (*e.g.*, airfare, meals, and lodging).

### COMPENSATION RECEIVED BY WALLER FROM THE DEBTOR

27.     Per the terms of the Engagement Letter, on July 22, 2019, the Debtor paid Fifty Thousand Dollars ($50,000) to Waller as an advance payment retainer consistent with the Tennessee Rules of Professional Conduct.[3]

28.     Pursuant to the Engagement Letter, on December 13, 2019, the Debtor paid an additional One Hundred Fifty Thousand Dollars ($150,000) to Waller, bringing the advance payment retainer balance (the "***Retainer Balance***") to Two Hundred Thousand Dollars ($200,000).

29.     A chart identifying the statements setting forth the professional services provided by Waller to the Debtor and the expenses incurred by Waller in connection with such services, as well as the advance payment retainer transferred by the Debtor to Waller, prior to the Petition Date is set forth in the Roth Declaration.

30.     Pursuant to Rule 2016(b), Waller has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the

---

[3] In order to make payments to third parties, the Debtor funds, or causes to be funded, payments to Harrisburg Catholic Administrative Services, Inc. ("**HCAS**").  As part of its administrative responsibilities pursuant to certain services agreements, HCAS, in turn, makes payments to such third parties on the Debtor's behalf using such funds.

4816-5144-5426.4

partners, associates, and contract attorneys associated with Waller or (b) any compensation another person or party has received or may receive.

31.     As of the Petition Date, the Debtor did not owe Waller any amounts for legal services rendered before the Petition Date.

32.     Although certain expenses and fees may have been incurred but not yet applied to Waller's advance payment retainer, the amount of Waller's advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

33.     Consistent with past practice, Waller will charge no more than $0.20 per page for standard duplication services in this Chapter 11 Case, and Waller does not charge its clients for incoming facsimile transmissions.

34.     Throughout this Chapter 11 Case, Waller will maintain detailed, contemporaneous records of time spent, as well as any actual and necessary expenses incurred, in connection with the rendering of the legal services described above by category and nature of the services rendered.

35.     Notwithstanding the foregoing, Waller acknowledges its compensation will be subject to approval by this Court.

36.     As set forth in the Roth Declaration, Waller intends to apply to this Court for payment of compensation and reimbursement of expenses, in accordance with the procedures set forth in the applicable provisions of section 330 and section 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local rules, as those procedures may be modified or supplemented by order of this Court.

37. Waller has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this Chapter 11 Case, other than as permitted pursuant to section 504 of the Bankruptcy Code.

38. Waller also intends to make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the U.S. Trustee Fee Guidelines, both in connection with this application and the interim and final fee applications to be filed by Waller in this Chapter 11 Case.

39. The Debtor will be approving a prospective budget and staffing plan for Waller's engagement for the postpetition period as appropriate.

40. In accordance with the U.S. Trustee Fee Guidelines, the budget may be amended, as necessary to reflect changed or unanticipated developments.

41. The Debtor has also approved the Waller attorneys staffed on this engagement, subject to modification depending upon further case developments.

42. As set forth in the Danneker Declaration, the Debtor recognizes that it is the Debtor's responsibility to review the billing practices of its counsel, to ensure that the fees and expenses remain consistent with the Debtor's expectations and the exigencies of this Chapter 11 Case.

43. The Debtor will review the invoices of its professionals, including the invoices of Waller.

44. By separate application, the Debtor is seeking Court approval of the retention and employment of Keegan, Linscott & Associates, PC as financial advisors, and Kleinbard, LLC as special counsel. The Debtor has also previously sought approval of Epiq Corporate Restructuring, LLC as the Debtor's claims, noticing, and balloting agent. The Debtor may also file motions or

applications to employ additional professionals. Each of the Debtor's Professionals works and will continue to work under the direction of the Debtor's management.

45.     The Debtor's senior management is committed to minimizing duplication of services, to reduce professional costs, among other things. To that end, Waller will work closely with each of the Debtor's Professionals to ensure that there is no unnecessary duplication of effort or cost.

## WALLER'S DISINTERESTEDNESS

46.     To the best of the Debtor's knowledge and as disclosed in this application and the Roth Declaration, (a) Waller is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and (b) Waller has no connection to the Debtor, its creditors, or other parties in interest, except as may be disclosed in the Roth Declaration.

47.     Waller will review its files periodically during the pendency of this Chapter 11 Case, to ensure that no conflicts or other disqualifying circumstances exist or arise.

48.     If any new relevant facts or relationships are discovered or arise, Waller will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Rules 2014(a) of the Bankruptcy Rules.

## BASIS FOR RELIEF REQUESTED

49.     Section 327(a) of the Bankruptcy Code provides that a debtor in possession may, with the court's approval, employ professionals that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as defined by section 101(14) of the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code. *See* 11 U.S.C. § 101(14). Additionally, section 1107(b) of the Bankruptcy Code provides that a professional is not disqualified for employment by a chapter 11 debtor in possession under

4816-5144-5426.4

10

section 327(a) of the Bankruptcy Code solely because of its employment by or representation of the debtor before the commencement of the case. *See* 11 U.S.C. § 1107(b).

50.     Waller's services will enable the Debtor to execute faithfully their duties as a debtor in possession, and are necessary to the successful functioning of the Chapter 11 Case. Based upon both its extensive experience and expertise, and its prior representation of the Debtor, Waller is both well-qualified and uniquely able to represent the Debtor during the Chapter 11 Case in an efficient, cost-effective, and timely manner. As stated above, the Debtor does not believe that Waller holds or represents any interest adverse to the Debtor's estate, and they believe that Waller is a "disinterested person" under the Bankruptcy Code. Accordingly, the Debtor submits that the retention of Waller is in the best interests of the Debtor, their estate, and their creditors and should be approved by the Court.

## RESERVATION OF RIGHTS

51.     Nothing contained in this application is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

52.     Similarly, if this Court grants the relief sought in this application, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

53.     The Debtor has provided notice of this application by electronic mail, facsimile, or overnight mail to: (a) the Office of the United States Trustee for the Middle District of Pennsylvania; (b) the Debtor's twenty (20) largest unsecured creditors; (c) the Debtor's secured creditors; and (d) all parties entitled to notice pursuant to Rule 2002 of the Bankruptcy Rules.

4816-5144-5426.4

54.     Given the nature of the relief requested in this motion, the Debtor submits that no other or further notice is necessary or required.

**<u>NO PRIOR REQUEST</u>**

55.     The Debtor has not made a prior request to this Court or any other court for the relief sought in this motion.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: February 24, 2020

Respectfully submitted,

_/s/ David L. Danneker_

Very Reverend David L. Danneker, Ph.D.
Vicar General and Moderator of the Curia

**WALLER LANSDEN DORTCH & DAVIS, LLP**

Blake D. Roth (State Bar No. 306951)
Tyler N. Layne (admitted _pro hac vice_)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:     (615) 244-6380
Facsimile:     (615) 244-6804
Email:         blake.roth@wallerlaw.com
               tyler.layne@wallerlaw.com

-and-

**KLEINBARD, LLC**

Matthew H. Haverstick (State Bar No. 85072)
Joshua J. Voss (State Bar No. 306853)
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, Pennsylvania 19103
Telephone:     (215) 568-2000
Facsimile:     (215) 568-0140
Email:         mhaverstick@kleinbard.com
               jvoss@kleinbard.com

_Proposed Attorneys for the Debtor and Debtor In Possession_

**Exhibit A**

**Proposed Order**

4816-5144-5426.4

**UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

### ORDER APPROVING THE EMPLOYMENT AND RETENTION OF WALLER LANSDEN DORTCH & DAVIS, LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

Upon consideration the application (the "*Application*")[2] filed by the above-captioned Debtor; and the Court having found that it has jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and upon consideration of the Roth Declaration and Danneker Declaration in support thereof; and the Court having found that consideration of the Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Application as set forth therein is sufficient under the circumstances; and the Court having reviewed the Application and having considered statements in support of the Application at the hearing held before this Court (the "*Hearing*"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.
[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Application.

**IT IS THEREFORE ORDERED**:

1.      Pursuant to section 327(a) of the Bankruptcy Code and Local Rule 2014(c), the Debtor shall be, and hereby is, authorized to employ Waller effective as of the Petition Date, in accordance with the terms and conditions set forth in the Application and in the Engagement Letter, as modified herein, as its general counsel to render legal services to the Debtor as needed throughout the course of this Chapter 11 Case, including all professional services as outlined in the Application and Engagement Letter, and Waller is hereby authorized to perform any and all such necessary and appropriate professional services for the Debtor in this case.

2.      Waller shall charge the Debtor's estate for its legal services in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, and Waller shall maintain detailed records of all actual, necessary and appropriate costs and expenses incurred in connection with the aforementioned professional services.

3.      Waller shall be compensated upon appropriate application in accordance with sections 330 and 331 of the Bankruptcy Code, applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court, including by making a reasonable effort to comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "***Revised UST Guidelines***"), both in connection with the Application and the interim and final fee applications to be filed by Waller in this chapter 11 case.

4.      The costs and expenses incurred by Waller shall be reimbursed in conformity with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Revised UST Guidelines.

5.  Waller is authorized to apply the advance payments to satisfy any unbilled or other remaining prepetition fees and expenses Waller becomes aware of during its ordinary course billing review and reconciliation.

6.  Prior to any increases in Waller's rates beyond the 2020 rates set forth in the Application, Waller shall file a supplemental declaration with the Court and provide ten (10) business days' notice to the Debtor, the United States Trustee and any official committee. The supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtor has consented to the rate increase. The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.  Waller shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this Chapter 11 Case.

8.  The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Case, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Case to a case under chapter 7.

9.  The Debtor and Waller are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10.  Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules are satisfied by the contents of the Application.

11. To the extent the Application is inconsistent with this Order, the terms of this Order shall govern.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Exhibit B**

**Declaration of Blake D. Roth**

4816-5144-5426.4

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

### DECLARATION OF BLAKE D. ROTH IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER APPROVING THE EMPLOYMENT AND RETENTION OF WALLER LANSDEN DORTCH & DAVIS, LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE, TOGETHER WITH DISCLOSURE OF COMPENSATION PURSUANT TO BANKRUPTCY RULE 2016(b)

Pursuant to 28 U.S.C. § 1746, I, Blake D. Roth, hereby declare and state as follows:

### FOUNDATION

1.      I am a partner in the law firm of Waller Lansden Dortch & Davis LLP ("***Waller***"). I am admitted to practice before the courts of the Commonwealth of Pennsylvania, State of Tennessee, State of New Jersey, and the United States District Court for the Middle District of Pennsylvania, among others. I submit this declaration (this "***Declaration***"), pursuant to sections 327(a) and 329 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014 and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Middle District of Pennsylvania (the "***Local Rules***"), and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "***U.S. Trustee Fee***

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.

Case 1:20-bk-00599-HWV    Doc 54    Filed 02/24/20    Entered 02/24/20 16:38:31    Desc
Main Document      Page 20 of 54

***Guidelines***"), in support of the *Debtor's Application for Entry of an Order Approving the Employment and Retention of Waller Lansden Dortch & Davis LLP as Counsel for the Debtor and Debtor in Possession Effective as of the Petition Date* (the "***Application***").[2] Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

## THE DEBTOR'S RETENTION OF WALLER

2.    Waller is a national law firm with over 235 attorneys in five offices located in Austin, Nashville, Chattanooga, Memphis, and Birmingham. Waller has extensive expertise and experience in virtually all aspects of the law that may arise in the above-captioned chapter 11 case (the "***Chapter 11 Case***"), including substantial expertise in the fields of bankruptcy and restructuring, healthcare, corporate, employee benefits, environmental, finance, intellectual property, labor and employment, litigation, real estate, securities, and tax.

3.    The attorneys in Waller's Finance and Restructuring Practice Group[3] have significant experience representing debtors in large and complex cases under the Bankruptcy Code. In the past several years, Waller has represented the debtors in the chapter 11 cases of: (a) *In re Walker County Hospital Corporation*, Case No. 19-36300 (Bankr. S.D. Tex.); (b) *In re Promise Healthcare Group, Inc.*, Case No. 18-12491 (Bankr. D. Del.); (c) *In re Little River Healthcare Holdings, LLC,* et al., Case No. 18-60526 (Bankr. W.D. Tex.); (d) *In re Stone Panels, Inc. and Stone Panels Holding Corporation*, No. 16-32856 (Bankr. N.D. Tex); (e) *In re Oxane Materials, Inc.*, No. 15-32940 (Bankr. S.D. Tex.); (f) *In re Ranch 967 LLC*, No. 15-10314 (Bankr. W.D. Tex.); (g) *In re Blue Matrix Labs, LLC*, No. 15-52977 (Bankr. W.D. Tex.); (h) *In re Adilace Holdings, Inc. f/k/a Image Trends, Inc.*, No. 14-11583 (Bankr. W.D. Tex.); (i) *In re*

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the Application.
[3] Waller's Austin attorneys previously worked for the firm of Taube Summers Taylor Meinzer Brown, LLP (f/k/a Hohmann, Taube & Summers, LLP ) before joining Waller in February 2016.
4841-6016-5554.6

2

*Advanced Living Technologies, Inc.*, No. 13-10313 (Bankr. W.D. Tex.); and (j) *In re Church Street Health Management, LLC*, No. 12-01573 (Bankr. M.D. Tenn.).

4. Given Waller's breadth of experience in large bankruptcy matters, Waller is uniquely qualified to represent the Debtor in this Chapter 11 Case.

5. On July 15, 2019 (the "***Retention Date***"), the Debtor executed the engagement letter (the "***Engagement Letter***") with Waller, a true and correct copy of which is attached hereto as **Exhibit 1-A** concerning the engagement and assessment of the Debtor by Waller.

6. The Engagement Letter sets forth the scope of Waller's services. Since the Retention Date, Waller has provided the Debtor with a wide array of legal services in connection with their business affairs and their restructuring and reorganization efforts. Waller's professionals have worked closely with the Debtor's management and other professionals with regard to these matters and, given both past representations and recent work, Waller is well-acquainted with the Debtor's corporate history, structure, business operations, and the background that has lead the Debtor to file this Chapter 11 Case. As a result, Waller has developed relevant experience and expertise regarding the Debtor that will assist it in providing effective and efficient services in the Chapter 11 Case.

## SERVICES TO BE PROVIDED

7. The Debtor seeks to employ Waller on an hourly basis to act as the Debtor's general bankruptcy and restructuring counsel in the Chapter 11 Case and in matters that arise with respect thereto or to the Debtor, and to provide the Debtor with general legal services in other areas, including, without limitation, legal services relating to the operation of the Debtor's businesses, securities laws, tax, and corporate governance. In particular, the Debtor anticipates that Waller will render, among others, the following professional services:

4841-6016-5554.6

3

a.      advising the Debtor with respect to its powers and duties as a debtor in possession in the continued management and operation of the Debtor's business and property;

b.      advising and consulting on the conduct of this Chapter 11 Case, including all of the legal and administrative requirements of operating in a case under chapter 11 of the Bankruptcy Code;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor, and representing the Debtor in negotiations concerning litigation in which the Debtor is involved, including objections to claims filed against the Debtor's estate;

e.      preparing pleadings in connection with this Chapter 11 Case, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtor's estate;

f.      representing the Debtor in connection with obtaining authority to continue using cash collateral and obtaining postpetition financing;

g.      advising the Debtor in connection with any potential sale of assets;

h.      appearing before this Court and any appellate courts to represent the interests of the Debtor's estate;

i.      advising the Debtor regarding tax matters;

j.      taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related to the foregoing; and

k.      performing all other necessary legal services for the Debtor, in connection with the prosecution of this Chapter 11 Case, including: (i) analyzing the Debtor's leases and contracts and the assumption and assignment or rejection of same; (ii) analyzing the validity of liens against the Debtor or its estate; and (iii) advising the Debtor on corporate and litigation matters.

8.      The Debtor requires knowledgeable counsel to provide these essential professional services. Waller has stated its desire and willingness to act in the Chapter 11 Case and provide the necessary services as attorneys for the Debtor. As noted above, Waller has

substantial expertise in all of these areas, and has gained valuable knowledge of the Debtor's business and financial affairs as a result of its prepetition representation of the Debtor. For all of these reasons, Waller is both well qualified and uniquely able to represent the Debtor's interests in the Chapter 11 Case.

## PREPETITION PAYMENTS TO WALLER

9.      Per the terms of the Engagement Letter, on July 22, 2019, the Debtor paid Fifty Thousand Dollars ($50,000) to Waller as an advance payment retainer consistent with the Tennessee Rules of Professional Conduct.[4]

10.      Pursuant to the Engagement Letter, on December 13, 2019, the Debtor paid an additional One Hundred Fifty Thousand Dollars ($150,000) to Waller, bringing the advance payment retainer balance (the "***Retainer Balance***") to Two Hundred Thousand Dollars ($200,000).

11.      Shortly before the Petition Date, Waller applied a portion of the Retainer Balance to pay all then accrued and anticipated unpaid fees for services performed and expenses incurred. Accordingly, Debtor will not owe Waller any sums for prepetition services.

12.      In the seven (7) months prior to the filing of the Chapter 11 Case, Waller received payments from the Debtor in the aggregate amount of approximately $233,278.72 for professional services rendered and expenses incurred. After giving effect to the reconciliation process described in the preceding paragraph, Waller expects the Retainer Balance to be approximately $163,744.30. This Retainer Balance will be held by Waller as security for post-petition services and expenses. A chart detailing the timing and amount of each advance payment

---

[4] In order to make payments to third parties, the Debtor funds, or causes to be funded, payments to Harrisburg Catholic Administrative Services, Inc. ("***HCAS***").  As part of its administrative responsibilities pursuant to certain services agreements, HCAS, in turn, makes payments to such third parties on the Debtor's behalf using such funds.
4841-6016-5554.6

and application of the Retainer Balance against fees and expenses is attached hereto as **Exhibit 2**.

## WALLER'S FEES FOR SERVICES TO BE RENDERED
## IN CONNECTION WITH THE CHAPTER 11 CASE

13. Except as described herein, pursuant to the terms and conditions of the Engagement Letter and subject to the Court's approval, Waller intends to (a) charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, and (b) seek reimbursement of actual and necessary out- of- pocket expenses.

14. Waller's current hourly rates for matters related to this Chapter 11 Case are as follows:

| Professional Level | Hourly Rate Range |
|---|---|
| Partner | $395 - $765 |
| Sr. Counsel | $475 - $665 |
| Counsel | $385 - $610 |
| Sr. Associate | $335 - $410 |
| Associate | $280 - $335 |
| Staff Attorney | $210 - $350 |
| Paralegal | $180 - $270 |
| Staff | $20 - $285 |

15. Waller's hourly rates are set at a level designed to compensate Waller fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[5] Waller has represented

---

[5] The hourly rates charged by Waller professionals differ based on, among other things, the professional's level of experience. Like many of its peer law firms, Waller increases the hourly billing rate of attorneys and paraprofessionals each year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the U.S. Trustee Fee Guidelines). As set forth in the Proposed Order, Waller will provide ten business days' notice to the

4841-6016-5554.6

6

the Debtor during the period before the Petition Date using the hourly rates listed above. These hourly rates are consistent with the rates that Waller charges other non-bankruptcy and chapter 11 clients, regardless of the location of the chapter 11 case. Moreover, the rate structure is appropriate and not significantly different from (a) the rates Waller charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Waller will perform in this Chapter 11 Case.

16.     A list of the professionals currently expected to provide services to the Debtor and the current hourly rates for these professionals for 2020 is attached hereto as **<u>Schedule 1</u>**. Other attorneys may also provide services to the Debtor as well, depending on the legal issues facing the Debtor.

17.     Waller will maintain detailed, contemporaneous records of time spent, as well as any actual and necessary expenses incurred, in connection with the rendering of the legal services described above by category and nature of the services rendered. Notwithstanding the foregoing, Waller acknowledges its compensation will be subject to approval by this Court.

18.     Waller intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court. As specified above, Waller will hold the Retainer Balance as security for postpetition services and expenses and will bill the Debtor during the pendency of the Chapter 11 Case, subject to approval by the

---

Debtor, the U.S. Trustee, and any official committee before implementing any periodic increases,   and shall file such notice with the Court.
4841-6016-5554.6

Court. The Retainer Balance will be applied to Waller's final fee application, as approved by the Court.

19.     Waller has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the Chapter 11 Case, other than as permitted pursuant to section 504 of the Bankruptcy Code. Waller also intends to make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the U.S. Trustee Fee Guidelines, both in connection with the Application and the interim and final fee applications to be filed by Waller in this Chapter 11 Case.

20.     It is Waller's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Waller's policy to charge its clients only the amount actually incurred by Waller in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging. In addition, Waller professionals also may charge their overtime meals and overtime transportation to the Debtor consistent with prepetition practices.

21.     Consistent with past practice, Waller will charge no more than $0.20 per page for standard duplication services in this Chapter 11 Case. Waller does not charge its clients for incoming facsimile transmissions.

22.     By separate applications, the Debtor is seeking Court approval for the retention of Keegan, Linscott & Associates, PC as financial advisors, and Kleinbard, LLC as special (collectively with Waller, the "***Debtor's Professionals***"). The Debtor previously sought approval

4841-6016-5554.6

8

to retain Epiq Corporate Restructuring, LLC as their claims, noticing and balloting agent. The Debtor may also file motions or applications to employ additional professionals.

23.     Each of the firms listed above works, and will continue to work, under the direction of the Debtor's management. I understand that the Debtor's directors and senior management are committed to minimizing duplication of services to reduce professional costs, among other things.  To that end, Waller will work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.

## **WALLER'S DISINTERESTEDNESS**

24.     To the best of my knowledge, information, and belief, (a) other than its prior representations of the Debtor and its representation in connection with the Chapter 11 Case, Waller has no connection with the Debtor except as disclosed herein; (b) Waller does not represent, and has not represented, any entity other than the Debtor in the Chapter 11 Case; (c) Waller does not have any connection with, and has not represented in the past, the United States Trustee for the Middle District of Pennsylvania, or any person employed by the Office of the United States Trustee for the Middle District of Pennsylvania; and (d) Waller does not have any connection with the Debtor's creditors, any other party in interest, or their respective attorneys and accountants, except as set forth below.

25.     To check and clear conflicts, and in preparing my declaration, Waller used a set of procedures that it has developed to ensure compliance with the requirements of the Pennsylvania Rules of Professional Conduct, conflicts rules observed by the Third Circuit Court of Appeals, the Bankruptcy Code, and the Bankruptcy Rules regarding the retention of professionals in chapter 11 cases. Pursuant to these procedures, Waller performed the following actions to

Case 1:20-bk-00599-HWV    Doc 54    Filed 02/24/20    Entered 02/24/20 16:38:31    Desc
Main Document      Page 28 of 54

determine whether Waller or any of its attorneys has any connections with, has in the past represented, or is currently representing potential parties in interest in the Chapter 11 Case:

(a)    A list of interested parties (the "***Interested Parties***") was created using information provided by the Debtor and additional information identified by Waller. The list of Interested Parties is comprised of the following entities, whose identities are set forth in **Schedule 2**, attached hereto:

      (i)      the Debtor and certain non-debtor affiliates;

      (ii)     the Debtor's secured bank lenders and their counsel;

      (iii)    the Debtor's top 20 unsecured creditors;

      (iv)    the Debtor's prepetition and (proposed) postpetition advisors, attorneys, and other professionals;

      (v)     officers, managers, and board members of the Debtor serving currently or within the past two years;

      (vi)    the Debtor's cash management banks, landlords, utility providers, insurers, insurance brokers, and taxing authorities;

      (vii)   parties adverse to the Debtor in significant litigation;

      (viii)  lienholders on property of the Debtor's estates;

      (ix)    United States Bankruptcy Judges in the Middle District of Pennsylvania; and

      (x)     United States Trustee for the Middle District of Pennsylvania, Harrisburg Division, and their attorneys.

(b)    Waller compared each of the Interested Parties to the names that Waller maintains in its master conflicts database. Waller's client database includes: (i) the name of each current or former client; (ii) the names of any entities materially related to, or materially adverse to, such current or former client; (iii) the names of the Waller attorneys responsible for such current or former clients; (iv) the status of the matter as either "active" or "inactive"; and (v) the dates on which the matter was opened and/or closed. Waller also circulated the list of Interested Parties to its attorneys, who were required to disclose any actual or potential conflicts of interest as part of Waller's normal conflicts screening procedures; and

(c)    Any matches between the Interested Parties and the entities in Waller's client database were identified, reviewed by an attorney, and compiled for purposes of this Declaration. To the extent that Waller currently represents, or has represented

within the last three years, any of the Interested Parties, the identities of such entities are set forth in this Declaration. In determining whether a client is presently represented by Waller, Waller attorneys relied on the existence of an "active" notation on the report to reflect current representation. With respect to matters showing as "inactive," Waller relied on the "close date" to determine whether the representation occurred within the past three years. If an "inactive" matter opened prior to February 2017 showed no "close date," Waller assumed for purposes of this disclosure that the matter was inactive during the past three years and did not include the client in this Declaration. If an "inactive" matter was opened on or after February 2017 but showed no "close date," the client is included in this Declaration.

26.     Based on the search of names set forth in <u>Schedule 2</u>, Waller concluded it has the following connections with the Debtor and the Interested Parties:

(a)     Waller currently represents, and may in the future continue to represent, Republic Services. No Waller attorney working on this Chapter 11 Case is personally involved with the representation of Republic Services. Waller does not believe its representation of Republic Services presents a conflict for Waller, but is making this disclosure out of an abundance of caution. To be clear, Waller has not represented and will not represent Republic Services or any other parties other than the Debtor in this Chapter 11 Case.

(b)     From time to time, Waller has represented, and likely will continue to represent, certain creditors of the Debtor and other parties actually or potentially adverse to the Debtor in matters unrelated to the Chapter 11 Case. As described herein, Waller has undertaken a detailed search to determine whether it represents or has represented any significant creditors, insiders or other parties in interest in such unrelated matters, and all such known representations within the last three years are described herein. Due to the breadth of Waller's client base, the firm is not subject to undue influence of any single client.

27.     Other than as disclosed in the preceding paragraph, Waller does not have any connections with the Interested Parties. Services provided to the entities disclosed herein and/or their affiliates or related entities as identified by Waller's master client database, do not individually represent a material percentage of Waller's revenue for the twelve-month period ending February 1, 2020. Moreover, Waller has a diverse client base and does not believe that any individual entity (or in the case of affiliated entities, any such affiliate group) on the

Interested Parties list represents more than 1.5% of Waller's revenue for the twelve-month period ending February 1, 2020. Due to the breadth of Waller's client base, the firm is not subject to the undue influence of any single client. To be clear, Waller does not and will not represent any of these parties in connection with the Chapter 11 Case.

28.     I am confident that our diligence has resulted, to the greatest extent possible, in the disclosure of all potential conflicts. However, despite the efforts described herein to identify and disclose Waller's connections with parties in interest in the Chapter 11 Case, I am unable to state with absolute certainty that every client representation or other connection has been disclosed because Waller is a national law firm with over 235 attorneys in five offices. In this regard, if Waller discovers additional information that requires disclosure, Waller will file a supplemental disclosure with the Court. Additionally, to the extent that issues may arise which would cause the Debtor to be adverse to any of Waller's clients, Waller will obtain and disclose waivers or, to the extent that it would not be appropriate for Waller to represent the Debtor with respect to such matters, other counsel employed by the Debtor will represent the Debtor in connection with such matters.

29.     Based upon information available to me at this time, I believe that Waller is a "disinterested person" pursuant to section 101(14) of the Bankruptcy Code, and that Waller does not hold or represent an interest adverse to the Debtor or their estates as required by section 327(a) of the Bankruptcy Code. Specifically, I do not believe that the connections between Waller and the entities listed herein will impair Waller's ability to represent the Debtor in this Chapter 11 Case.

30.     No promises have been received by Waller or any member or associate thereof as to payment or compensation in connection with this case other than in accordance with the

4841-6016-5554.6

12

provisions of the Bankruptcy Code and the Bankruptcy Rules. Other than with members and regular associates of the firm, Waller has no agreement with any other entity to share with such entity any compensation received by Waller.

31.     Consistent with the U.S. Trustee Fee Guidelines, I state as follows:

- Waller has not agreed to a variation of its standard or customary billing arrangements for this engagement.

- None of Waller's professionals included in this engagement have varied their rate based on the geographic location of the Chapter 11 Case.

- Waller was retained by the Debtor pursuant to the Engagement Letter dated as of July 15, 2019. The material terms of the prepetition engagement are the same as the terms described in the Application and herein, and the billing rates have not changed other than periodic annual increases as provided in the Engagement Letter and explained in the Application.

- The Debtor has approved or will be approving a prospective budget and staffing plan for Waller's engagement for the postpetition period as appropriate. In accordance with the U.S. Trustee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments.

32.     The foregoing constitutes the statement of Waller pursuant to sections 327(a), 329 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 24, 2020

 */s/ Blake D. Roth*
Blake D. Roth

**EXHIBIT 1**

**ENGAGEMENT LETTER**

4841-6016-5554.6



Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
P.O. Box 198966
Nashville, TN 37219-8966

615.244.6380   main
615.244.6804   fax
wallerlaw.com

Blake D. Roth
615.850.8749   direct
blake.roth@wallerlaw.com

July 15, 2019

Roman Catholic Diocese of Harrisburg
Attn: Very Reverend David L. Danneker, Ph.D.
Vicar General and Moderator of the Curia
4800 Union Deposit Road
Harrisburg, Pennsylvania 17111-3710

      Re:   Engagement of Waller Lansden Dortch & Davis, LLP

Dear David:

We are pleased that the Roman Catholic Diocese of Harrisburg (the "***Diocese***") has decided to engage Waller Lansden Dortch & Davis, LLP. It is the practice of the firm to enter into engagement letters with our clients. This letter shall serve that purpose by setting forth the basis upon which we have agreed to undertake this representation.

### *Scope of Representation*

Our client will be the Diocese and any related affiliates later identified by amended engagement letter. We will not represent individual officers, directors, employees or owners. However, we anticipate that, in the course of our engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

We will advise the Diocese in connection with planning and preparing for a possible reorganization under title 11 of the United States Code (the "***Bankruptcy Code***") and the filing and implementation of a reorganization of the Diocese under the Bankruptcy Code. Our engagement will be divided into three phases, as follows:

1. Phase 1 will consist of reviewing and analyzing the Diocese's business records, financial statements, and corporate documentation, in order to assess and determine under what conditions a reorganization would be necessary or advisable and whether a reorganization under the Bankruptcy Code is achievable and advisable;

2. Upon determining, in consultation with the Diocese, that a reorganization under the Bankruptcy Code is achievable and advisable, Phase 2 will consist of: (a) preparation of the necessary documentation to commence a reorganization proceeding under the Bankruptcy Code; (b) negotiation with creditors and other parties in interest necessary to the commencement of a reorganization proceeding under the Bankruptcy Code; (c) preparation of a budget and framework plan of reorganization, in consultation with the Diocese; and (d) upon approval by the

Diocese of a budget and framework plan of reorganization, commencement of a reorganization proceeding under the Bankruptcy Code; and

3. Upon commencement of a reorganization proceeding under the Bankruptcy Code, Phase 3 will consist of representing the Diocese in all aspects of the reorganization proceeding, in order to prosecute and consummate a successful plan of reorganization.

It is not anticipated or contemplated that Phase II will consist of a complete negotiation of a plan of reorganization prior to commencing a reorganization proceeding under the Bankruptcy Code. Similarly, it is not anticipated or contemplated that: (a) Phase I will exceed four to six weeks in duration; or (b) upon determining to proceed to Phase II, that Phase II will exceed three months. You may limit or expand the scope of our representation from time to time, provided that any substantial expansion of our services must be agreed to by us in writing in advance and must be consistent with both our ethical obligations and the terms of this letter. The terms of this letter apply to future engagements of the firm by the Diocese unless we mutually agree otherwise.

Our engagement does not include providing to you any advice or other legal services relating to federal or state securities laws, including appearing or practicing before the U.S. Securities and Exchange Commission or your disclosure obligations under such laws, and we understand that you will not, without our prior written consent, name us or include documents or information we provide to you in any filings with federal or state securities regulators, including the SEC.

The services to be provided by the firm in connection with the engagement will encompass all services normally and reasonably associated with this type of engagement which the firm is requested and is able to provide and which are consistent with its ethical obligations.

Unless we receive instructions to the contrary, we will direct all of our formal communications and correspondence to your attention. If you would like for us to communicate instead with someone else on any particular subject, please provide the appropriate information.

All work on this matter will be done by me or performed under my general supervision. As appropriate, we will utilize other attorneys, legal assistants and clerical personnel according to the needs of the matter and in order to ensure that your work is being performed efficiently and economically. Should you have any questions or concerns about any person from this firm who is working on the Diocese's matters, or any work being performed by us on your behalf, please do not hesitate to contact me about your questions or concerns. Also, we would like for you to note that the firm is a limited liability partnership. If you have any questions on this, please contact our General Counsel, Ames Davis, at (615) 244-6380.

### *Review and Waiver of Conflicts*

We have evaluated potential conflicts of interest with respect to our representation of the Diocese. We are not currently aware of any conflicts that would preclude our representation of the Diocese in connection with this matter. We must rely on you to tell us if and when the Diocese

develops relationships with other individuals or entities in the future that we should screen for possible conflicts of interest.

You are aware, of course, that the firm represents many other companies and individuals. It is possible that during the time that we are representing the Diocese, some of our present or future clients will have disputes or transactions with the Diocese. Absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the firm to choose the firm as its counsel and preclude the firm from representing you, or other clients of our firm, in pending or future matters. Given that possibility, we wish to be fair both to you and to our other clients. Accordingly, this letter will confirm our mutual agreement that the firm may represent other present or future clients on matters which are unrelated to those for which it had been or is then engaged by the Diocese, which are referred to as "Permitted Adverse Representations." Before agreeing to this provision, the Diocese should have it reviewed by its general counsel or independent outside counsel. In furtherance of this mutual agreement, the Diocese agrees that it will not for itself or any other party assert the firm's representation of the Diocese, either previously, in its then existing representation, or in any other matter in which the Diocese retains the firm, as a basis for disqualifying the firm from representing another party in any Permitted Adverse Representation and agrees that any Permitted Adverse Representation does not constitute a breach of any duty owed by the firm.

Our representation of the Diocese is premised on the firm's adherence to its professional obligation not to disclose any confidential information or to use it for another party's benefit without the Diocese's consent. Provided that the firm acts in this manner, the Diocese agrees that it will not for itself or any other party assert that the firm's possession of such information, even though it may relate to a matter for which the firm is representing another client or may be known to someone at the firm working on such a matter, (a) is a basis for disqualifying the firm from representing another of its clients in any matter in which the Diocese or any other party has an interest or (b) constitutes a breach of any duty owed by the firm.

### *Client Responsibilities*

You agree on behalf of the Diocese to pay our statements for services and expenses in accordance with this letter. You also agree on behalf of the Diocese to cooperate fully with us and to provide promptly all information known or available to you relevant to our representation. If you affiliate with, acquire, are acquired by or merge with another company, you will provide us with sufficient notice to permit us to withdraw as your attorneys if we determine that such affiliation, acquisition or merger creates a conflict of interest between any of our clients and the other party to such affiliation, acquisition or merger, or if we determine that it is not in the best interests of the firm to represent the new entity. You agree to keep us apprised of your current contact information.

### *Fees and Expenses*

Our fees will be based on our standard hourly rates for each attorney and paralegal devoting time to this matter and billed monthly. The hourly rate will vary depending upon the person who is working on the matter and the fee schedule then in effect. My present hourly rate is $405. Our attorneys' hourly rates range from $215 to $700 per hour, depending on the level of

experience of the individual involved. The hourly rates for paralegals range from $150 to $240. We customarily review our rates during the last quarter of each year and any adjustments generally will become effective for work performed on or after the following January 1 to account for increased business costs and the increased level of experience of our attorneys. As discussed, Waller will provide a five percent (5%) discount from our standard hourly rates for each attorney and paralegal devoting time to this matter.

While Waller's fees will be based upon our standard hourly rates (with the five percent discount), based upon the above-described scope of services for Phase I and Phase II of this engagement, during: (a) Phase I, Waller will cap the fees chargeable to the Diocese to Fifty Thousand Dollars ($50,000); and (b) Phase II, Waller will cap the total fees chargeable to the Diocese to Two Hundred Thousand Dollars ($200,000) plus any amounts not incurred below the cap set for Phase I. Upon the commencement of Phase II, amounts incurred above the cap during Phase I may be paid during Phase II; provided, however, that in no event shall the Diocese fees for Phase I and Phase II exceed Two Hundred Fifty Thousand Dollars ($250,000) in the aggregate.

In addition, we will charge for out-of-pocket disbursements made in connection with this representation. Usual disbursements include, but are not limited to, examples such as filing fees, travel expense and transcripts. We also charge for certain in-house support services such as messenger and delivery service, photocopying, document assembly and processing and computerized research. Our disbursements and charges for services are shown on our monthly bills as "Expenses." In addition, where expenses are significant, invoices may be forwarded directly to you for payment.

During the course of this engagement, we may suggest that the Diocese authorize us to retain consultants, experts or other vendors ("vendors") to provide additional services needed for our successful representation of the Diocese in this matter. Any such party will be chosen by the Diocese in its sole discretion. In order to protect the information and opinions given by vendors to the maximum extent possible, we may recommend that we retain any vendors on the Diocese's behalf. However, we will forward to the Diocese copies of all statements and billings received from vendors, and you agree on the Diocese's behalf to advance to us the funds necessary to reimburse them in a timely fashion. In the event the Diocese contests or objects to all or part of any statement or billing received from a vendor, our firm will not be responsible for advancing funds to pay those disputed amounts and may exercise its absolute right to assign its contract with the vendors to the Diocese. The Diocese consents to such an assignment.

Each of our attorneys and paralegals maintains detailed time records of services performed. This practice results in a monthly billing statement showing, on a daily basis, the amount of time spent, the work performed, by whom, and the total amount charged. Our statements will be mailed during the month following performance of the service.

As is our practice with clients receiving services in connection with a potential bankruptcy filing, because of certain requirements imposed by the Bankruptcy Code, our representation will not commence until we receive from you a retainer in the amount of: (a) $50,000 for Phase I; (b) $200,00 for Phase II; and (c) $200,000 for Phase III. (The retainer for each phase will be carried over to the following phase, to the extent unused.) We will not draw on the retainer during

4820-8765-9420.1

Phase I or Phase II. During Phase III, We will draw against those funds to satisfy our monthly statements, copies of which will be sent to the Diocese for its information. Any unapplied balance will be returned to the Diocese immediately upon termination of our representation.

The Diocese shall replenish the amount held on deposit monthly upon receipt of each bill. In addition, should a monthly bill exceed the amount held on deposit, the Diocese will replenish such deposit and pay any balance owing on the current monthly bill after application thereof. If the amount held on deposit is not replenished promptly, we reserve the right to discontinue our representation until the Diocese pays such amount. We reserve the right to request additional advances from time to time based on our estimates of future work to be undertaken. If the amount requested is not promptly paid, we reserve the right to discontinue our representation until the Diocese pays such amount.

We will send a statement for our services on a monthly basis. The Diocese hereby agrees to pay our statements promptly upon receipt. If any statement remains unpaid for more than 30 days, we may cease performing services for the Diocese until arrangements satisfactory to us have been made for payment of outstanding statements and the payment of future fees and expenses. We reserve the right to charge interest on all amounts not paid within 30 days of billing at the rate of 1% per month. Our fees and expenses due include those incurred to collect unpaid statements. Our fees for such work will be charged at standard hourly rates.

We welcome at any time a frank and open discussion with you concerning our rates, monthly statements and remittance policies as outlined above. If you have questions or concerns about any item on our statements, please contact me, or if a question should be addressed at another level, you may call John Southwood, Director of Finance, at (615) 850-8837. Additionally, should we have questions during the course of this representation concerning your remittance of payment, John, or a member of his staff, may contact you.

### *Spoliation of Evidence*

The Diocese should be aware that the alteration, destruction, or other "spoliation" of evidence relevant to a legal dispute or which may lead to the discovery of relevant information may give rise to additional liability and/or may significantly impair the Diocese's position in litigation. This may include physical, as well as documentary and electronic, evidence. If any issue concerning the alteration or disposal of anything that may constitute evidence relevant to any legal dispute is encountered, we should be consulted immediately.

### *Insurance Considerations*

The Diocese should consider whether or not insurance is available which may provide coverage, including attorneys' fees and expenses related to this engagement.

### *Preservation of Documents*

In connection with this matter, we ask that you conduct a thorough search of your office and any file storage areas for all items regarding the circumstances that are the subject of this representation.

Your search should include all documents (e.g., letters, memos, handwritten notes), microfilm, audiotapes, videotapes, electronic files, e-mail, computer diskettes, information stored on your computer desktop and/or laptop hard drive (including any handheld or home computers), central group files and information stored in onsite or offsite storage areas. You should search and preserve even those items that you may consider confidential (e.g., trade secrets, sensitive business information) or privileged (e.g., communications to/from a lawyer, communications seeking legal advice). We may have an ongoing obligation to provide documents in this matter. Thus, you must also inform us of any responsive information that you obtain, create or become aware of in the future.

You must maintain these items and any other responsive items that you may later obtain and/or create until you are otherwise notified by us. You may not destroy, alter or otherwise dispose of these items. Failure to comply with these requirements can lead to serious consequences, including sanctions by a court.

### _Conclusion of Representation; Retention and Disposition of Documents_

The Diocese has the right to terminate our representation at any time. We will have the same right, subject to the duties imposed upon attorneys by the Tennessee Rules of Professional Conduct. Unless previously terminated, our representation of the Diocese will terminate upon our sending you our final statement for services rendered. Upon termination of our engagement, all fees previously incurred and all costs previously advanced will be due.

At the conclusion of our representation of the Diocese in this matter, by termination or otherwise, our files, including attorney work product pertaining to our representation, will be retained by the firm. All such documents will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us within a reasonable time after the termination of the engagement. Any otherwise nonpublic information the Diocese has supplied to us which is retained by us will be kept confidential in accordance with the Tennessee Rules of Professional Conduct. At your request, the Diocese's papers and property will be returned to it.

### _Post-Engagement Matters_

After completion of this representation, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. Unless you engage us after completion of the matter as described herein to provide additional advice on issues arising from these matters, the firm has no continuing obligation to advise you with respect to future legal developments. The provisions of this letter will continue in effect if the firm's representation of the Diocese was ended at your election (which, of course, the Diocese would be free to do at any time) or by the firm (which would be subject to ethical requirements).

You hereby consent to the firm disclosing your name and a brief description of any transactions completed by you with our assistance in our Website disclosures and/or marketing materials.

4820-8765-9420.1

**waller**

This agreement shall be governed by and interpreted in accordance with the laws of the State of Tennessee without regard to its conflicts of laws principles.

You may wish to review this letter with other counsel. Obviously, if you want to discuss any aspect of this letter further, please call me. We believe that candid communication between us is essential, and we welcome any suggestions you may have at any time as to how we might better be of service. My colleagues and I look forward to working with you.

Sincerely,

Blake D. Roth

BDR:bdr

## EXHIBIT 2

## PREPETITION PAYMENTS

| Date | Payment | Application to Fees and Expenses | Retainer Balance | Narrative |
|------|---------|---------------------------------|------------------|-----------|
| 7/22/2019 | $50,000.00 | — | $50,000.00 | Retainer |
| 9/20/2019 | $28,271.21 | $28,271.21 | $50,000.00 | Payment of 9/12/2019 invoice |
| 11/26/2019 | $23,137.55 | $23,137.55 | $50,000.00 | Payment of 10/15/2019 invoice |
| 12/13/2019 | $150,000.00 | — | $200,000.00 | Retainer |
| 1/17/2020 | $8,261.17 | $8,261.17 | $200,000.00 | Payment of 1/7/2020 invoice |
| 2/4/2020 | $38,376.25 | $38,376.25 | $200,000.00 | Payment of 12/6/2019 invoice |
| 2/18/2020 | $98,976.84 | $98,976.84 | $200,000.00 | Payment of 2/14/2020 invoice |
| 2/19/2020 | — | 36,255.70 | $163,744.30 | Payment of 2/19/2020 invoice |
| **Totals at Petition Date** | $397,023.02 | $181,869.96 | $163,744.30 | |

## SCHEDULE 1

Waller Professionals to be Employed in Connection with the Chapter 11 Case

| Name | Title | Hourly Rate |
|---|---|---|
| Blake Roth | Partner | $425.00 |
| Tyler Layne | Partner | $410.00 |
| Evan Atkinson | Associate | $325.00 |
| Melissa Jones | Associate | $325.00 |
| Hunter Thornton | Associate | $295.00 |
| Chris Cronk | Paralegal | $265.00 |
| Ann Marie Jezisek | Paralegal | $180.00 |

# SCHEDULE 2

# INTERESTED PARTIES

## Debtor & Related Entities/Trusts

Roman Catholic Diocese of Harrisburg
Harrisburg Catholic Administrative Services, Inc.
Roman Catholic Diocese of Harrisburg Charitable Trust
Roman Catholic Diocese of Harrisburg Real Estate Trust
Roman Catholic Diocese of Harrisburg Irrevocable Trust
Foundation of Catholics United in Service
Pennsylvania Catholic Conference
Catholic Charities of the Diocese of Harrisburg, Pennsylvania. Inc.
Kolbe Catholic Publishing, Inc.

## Deaneries, Parishes, and Missions

### Adams Deanery, including the following parishes:
- Immaculate Heart of Mary Parish
- Saint Joseph the Worker Parish
- Basilica of the Sacred Heart Parish
- Saint Francis Xavier Parish
- Saint Joseph Parish
- Saint Vincent de Paul Parish
- Saint Aloysius Parish
- Annunciation of the Blessed Virgin Mary Parish
- Immaculate Conception of the Blessed Virgin Mary Parish

### Cumberland/Perry Deanery, including the following parishes:
- Good Shepherd Parish
- Saint Patrick Parish
- Saint Bernadette Mission Parish
- Our Lady of Lourdes Parish
- Our Lady of Good Counsel Parish
- Saint Katharine Drexel Parish
- Saint Elizabeth Ann Seton Parish
- Saint Joseph Parish
- Saint Bernard Parish
- Saint Theresa of the Infant Jesus Parish

### Dauphin Deanery, including the following parishes:
- Saint Matthew the Apostle Parish
- Cathedral Parish of Saint Patrick Parish
- Holy Family Parish
- Holy Name of Jesus Parish
- Our Lady of the Blessed Sacrament Parish
- Saint Catherine Labouré Parish
- Saint Francis of Assisi Parish
- Saint Margaret Mary Alacoque Parish
- Saint Joan of Arc Parish
- Sacred Heart of Jesus Parish
- Seven Sorrows of the Blessed Virgin Mary Parish
- Saint Jude Thaddeus Parish
- Queen of Peace Parish
- Prince of Peace Parish

### Franklin Deanery, including the following parishes:
- Saint Rita Parish
- Saint Ignatius Parish
- Corpus Christi Parish
- Our Lady of Refuge Mission
- Immaculate Conception of the Blessed Virgin Mary Parish
- Saint Mark the Evangelist Parish
- Saint Luke the Evangelist Mission
- Our Lady of the Visitation Parish
- Saint Andrew the Apostle Parish

### Lebanon Deanery, including the following parishes:
- Saint Paul the Apostle Parish
- Sacred Heart of Jesus Parish

- Our Lady of Fatima Mission
- Assumption of the Blessed Virgin Mary Parish
- Saint Benedict the Abbot Parish

- Saint Cecilia Parish
- Mary, Gate of Heaven Parish
- Holy Spirit Parish

North Lancaster Deanery, including the following parishes:

- Holy Trinity Parish
- Saint Peter Parish
- Saint Peter Parish
- Our Mother of Perpetual Help Parish

- Saint James Parish
- Saint Richard Parish
- Mary, Mother of the Church Parish
- Our Lady of Lourdes Parish

Northern Deanery, including the following parishes:

- Christ the King Mission
- Immaculate Conception of the Blessed Virgin Mary Parish
- Saint Joseph Parish
- Saint Columba Parish
- Our Lady of Mercy Parish

- Saint Joseph Parish
- Sacred Heart of Jesus Parish
- Saint George Mission
- Saint Joseph Parish
- Saint Pius X Parish
- Saint Monica Parish

Northumberland Deanery, including the following parishes:

- Our Lady of Hope Parish
- Queen of the Most Holy Rosary Parish
- Holy Angels Parish
- Our Lady Help of Christians Parish
- Divine Redeemer Parish

- Our Lady of Mount Carmel Parish
- Mother Cabrini Parish
- Saint Patrick Parish
- Sacred Heart of Jesus Mission Parish

South Lancaster Deanery, including the following parishes:

- Assumption of the Blessed Virgin Mary Parish
- Sacred Heart of Jesus Parish
- Saint Anne Parish
- Saint Anthony of Padua Parish
- Saint John Neumann Parish

- Saint Joseph Parish
- Saint Leo the Great Parish
- Saint Philip the Apostle Parish
- San Juan Bautista Parish
- Saint Catherine of Siena Parish

York Deanery, including the following parishes:

- Saint Joseph Parish
- Holy Infant Parish
- Saint John the Baptist Parish
- Sacred Heart of Jesus Parish

- Immaculate Conception of the Blessed Virgin Mary Parish
- Saint Joseph Parish
- Saint Patrick Parish
- Saint Rose of Lima Parish

## **Schools**

- Holy Family Consolidated School
- Saint Columbia School
- Good Shepherd School
- Trinity High School
- Saint Patrick School (Cumberland/Perry Deanery)
- Corpus Christi School
- Our Lady of Lourdes Regional School
- Our Lady of the Angels School
- Saint Joseph School (York Deanery - Dallastown)
- Saint Cyril Pre-School and Kindergarten

- Saint Joseph School (Northern Deanery)
- Our Mother of Perpetual Help School
- Saint Francis Xavier School
- Saint Joseph School (Adams Deanery)
- Saint Teresa of Calcutta School (Adams Deanery - Conewago Campus)
- Bishop McDevitt High School
- Harrisburg Catholic Elementary School
- Holy Name of Jesus School
- Saint Catherine Labouré School
- Saint Margaret Mary Alacoque School
- Saint Joan of Arc School

4841-6016-5554.6

- Lancaster Catholic High School
- Resurrection School
- Sacred Heart School
- Saint Anne School
- San Juan Bautista Pre-School
- Lebanon Catholic School
- Sacred Heart of Jesus School
- Delone Catholic High School
- Saint Joseph Academy Pre-School
- Saint Teresa Of Calcutta School (Adams Deanery - McSherrystown Campus)
- Saint Joseph School (Cumberland/Perry Deanery)

- Seven Sorrows of the Blessed Virgin Mary School
- Saint Philip the Apostle
- Saint Theresa School
- Saint John the Baptist School
- Saint Leo the Great School
- Saint Andrew School
- Saint Joseph School (York Deanery - York)
- Saint Patrick School (York Deanery)
- Saint Rose of Lima School
- York Catholic High School

## Lenders & Counsel

PNC Bank, National Association
Scott R. Mehok, Cozen O'Connor
B. Lynn Freeman, Buchanan Ingersoll & Rooney PC

## Top 20 Unsecured Creditors

PNC Bank, National Association
Diocese of Harrisburg Priest Pension Plan
Donald Asbee



John Doe 1

Patrick Duggan

Patricia Julius

Lara McKeever

John Doe 2
John Doe 3

## Advisors & Professionals

Kleinbard LLC
Matthew H. Haverstick
Joshua J. Voss
Kerwin & Kerwin, LLP
Terrence J. Kerwin
Keegan Linscott & Associates, PC
Christopher G. Linscott
Conan Bardwell

4841-6016-5554.6

5

Epiq Corporate Restructuring, LLC

## **Officers, Managers, and Senior Management**

### Roman Catholic Diocese of Harrisburg
Most Reverend Ronald W. Gainer, D.D., J.C.L. (Bishop of Harrisburg)
Very Reverend David L. Danneker, Ph.D. (Vicar General and Moderator of the Curia)
Mr. Don Kaercher (Chief Financial Officer)

### College of Consultors
Reverend Joshua R. Brommer
Very Reverend William C. Forrey, V.F.
Reverend Monsignor William J. King
Reverend Monsignor Robert E. Lawrence
Reverend Daniel C. Mitzel

Reverend Charles L. Persing
Reverend Thomas J. Rozman
Reverend Alfred P. Sceski
Very Reverend Neil S. Sullivan, V.F.

### Diocesan Finance Council
Mr. Mark B. Glessner
Dr. James Forjan
Ms. Lora A. Kulick, Esq.
Mr. Donald H. Nikolaus, Esq.
Very Reverend Edward J. Quinlan
Mrs. Lisa Rohrer
Mr. Kenneth R. Shutts

### Presbyteral Council
Reverend Joshua R. Brommer
Reverend Philip G. Burger
Very Reverend Paul M. Clark, JCL
Very Reverend Steven W. Fauser, V.F.
Very Reverend William C. Forrey, V.F.
Reverend Robert M. Gillelan
Reverend Leo M. Goodman
Reverend Monsignor William J. King
Reverend Martin Kobos, OFM Conv.
Reverend Monsignor Robert E. Lawrence
Reverend Monsignor James M. Lyons, V.F.
Reverend Timothy D. Marcoe
Reverend John McCloskey, OFM Cap.
Reverend J. Michael McFadden

Reverend Daniel C. Mitzel
Reverend Brian T. Olkowski
Reverend Charles L. Persing
Reverend Dnaiel K. Richards
Reverend Monsignor William M. Richardson
Very Reverend Luis R. Rodriguez, V.F.
Reverend Thomas J. Rozman
Reverend Alfred P. Sceski
Mark M. Speitel
Very Reverend Neil S. Sullivan, V.F.
Reverend John A. Szada
Reverend Francis J. Tamburro
Reverend Pang S. Tcheou
Reverend Allan F. Wolfe

## **Cash Management Banks**

PNC Bank
First National Bank
M&T Bank

## **Landlords**

Roman Catholic Diocese of Harrisburg Real Estate Trust (listed under Debtor & Related Entities/Trusts)

## Utility Providers

Bloomsburg Municipal Authority
Borough of Lewisburg Refuse Department
Capital Region Water
Citizens Electric Co.
City of Lancaster, PA
City Treasurer of Harrisburg, PA
Cocolamus Creek Disposal Service
Direct Entergy Business
Evans Disposal
Filson Water LLC
LAJSA
Lebanon Farms Disposal
Lower Paxton Township
Met-Ed - First Energy Corp.
Millersville Borough
Mostik Brothers Disposal
North Lebanon Township
Penn Waste Inc.
Pennsylvania American Water
PPL Electric Utilities Corp.
Republic Services
Suez Water Pennsylvania
Superior Plus Energy Services
Swatara Township Authority
Talley Petroleum
Town of Bloomsburg, PA
Tulpehocken Mountain Spring Water
UGI
Upper Allen Township
Walters Services Inc.
Waste Industries
Waste Management of Pennsylvania, Inc.

## Insurers and Brokers

The Graham Company
Catholic Mutual Relief Society of America
Travelers Boiler (through Catholic Mutual)
New York Marine & General Insurance Co.
The National Catholic Risk Retention Group
Federal Insurance Company (Chubb)
Starr Indemnity & Liability Insurance Company
NAS Insurance (through Catholic Mutual)
Associated Industries Insurance Company (Amtrust)
QBE Insurance Corporation
Safety National (workers' compensation surety bond)

## Governmental Entities

Office of Attorney General for the Commonwealth of Pennsylvania
Office of the District Attorney for Adams County Pennsylvania
Adams County Tax Services Department
Office of the District Attorney for Columbia County Pennsylvania
Columbia County Assessment Office & Tax Claim Bureau
Office of the District Attorney for Cumberland County Pennsylvania
Cumberland County Assessment Office
District Attorney's Office for Dauphin County Pennsylvania
Dauphin County Office of Tax Assessment
District Attorney's Office for Franklin County Pennsylvania
Franklin County Tax Assessment Department
District Attorney's Office for Juniata County Pennsylvania
Juniata County Assessor's Office
District Attorney's Office for Lancaster County Pennsylvania
Lancaster County Property Assessment Office
District Attorney's Office for Lebanon County Pennsylvania
Lebanon County Assessment Office
District Attorney's Office for Mifflin County Pennsylvania
Mifflin County Assessment Office
District Attorney's Office for Montour County Pennsylvania
Montour County Assessment Office
District Attorney's Office for Northumberland County Pennsylvania
Northumberland County Assessment Bureau
District Attorney's Office for Perry County Pennsylvania
Perry County Tax Assessment Office
District Attorney's Office for Snyder County Pennsylvania
Snyder County Assessment Office
District Attorney's Office for Union County Pennsylvania
Union County Assessment Office
District Attorney's Office for York County Pennsylvania
York County Assessment and Tax Claim Office

## Significant Litigation Parties

Donald B. Asbee
Patricia Julius a/k/a Patty Fortney
Jeffrey P. Fritz, Esq. (counsel to Patricia Julius)
Lara McKeever a/k/a Lara Fortney
Christina Heikel Connelly
█████████
Ryan O'Connor (class action lead plaintiff)
Kristen Hancock (class action lead plaintiff)
Stanley Schenck (class action lead plaintiff)
Patrick Duggan (class action lead plaintiff)
Sheamus Bonner (class action lead plaintiff)
D.K. (class action lead plaintiff)
John Doe (class action lead plaintiff)
Benjamin J. Sweet (class action lead counsel)
Timothy C. Hale (class action counsel)
Shanon J. Carson (class action counsel)

4841-6016-5554.6

Sarah R. Schalman-Bergen (class action counsel)
Jeff Osterwise (class action counsel)
Patrick Madden (class action counsel)
Richard M. Serbin (class action counsel)
Benjamin D. Andreozzi (class action counsel)
Nathaniel L. Foote (class action counsel)

## **Known Survivors of Sexual Abuse**

A sealed copy of the list of all the victims of sexual abuse known to the Diocese has been made available to the United States Trustee and will be made available to the Court any statutorily appoint committee upon request.

## **United States Bankruptcy Judges and Staff, Middle District of Pennsylvania**

Hon. Henry W. Van Eck
Hon Robert N. Opel II

## **Office of the United States Trustee, Middle District of Pennsylvania**

Frederic Baker, Acting Assistant U.S. Trustee
Wendy Paul, Paralegal Specialist
Rebecca Plesic, Paralegal Specialist
D. Troy Sellars, Trial Attorney
Gregory B. Schiller, Trial Attorney

4841-6016-5554.6

**<u>Exhibit C</u>**

**Declaration of the Very Reverend David L. Danneker**

4813-4264-2098.5

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC DIOCESE OF HARRISBURG, | Case No. 1:20-bk-00599 (HWV) |
| Debtor.[1] | |

**DECLARATION OF VERY REVEREND DAVID L. DANNEKER**
**IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY**
**OF AN ORDER APPROVING THE EMPLOYMENT AND RETENTION OF**
**WALLER LANSDEN DORTCH & DAVIS, LLP AS COUNSEL FOR THE DEBTOR**
**AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Pursuant to 28 USC § 1746, I, David L. Danneker, Ph.D., hereby declare and state as follows:

1.      I am the Vicar General and Moderator of the Curia of the Roman Catholic Diocese of Harrisburg (the "***Debtor***"), the debtor and debtor in possession in this chapter 11 case (the "***Chapter 11 Case***"). I have served in my current capacity since June 20, 2016.

2.      In such capacity, I am familiar with the matters set forth herein and make this declaration (this "***Declaration***") in support of the Debtor's application (the "***Application***")[2] seeking approval to retain and employ Waller Lansden Dortch & Davis LLP ("***Waller***"), effective as of the Petition Date, as general bankruptcy and restructuring counsel to the Debtor.

3.      I submit this Declaration in support of the Application, pursuant to the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "***U.S. Trustee Fee Guidelines***"). Except as otherwise indicated herein, all facts set forth in this

---

[1] The last four digits of the Debtor's federal tax identification number are: 4791. The Debtor's principal place of business is located at 4800 Union Deposit Road, Harrisburg, Pennsylvania 17111.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

Declaration are based on my personal knowledge or my discussions with other members of the Debtor's management team and the Debtor's advisors. If called upon to testify, I could and would testify competently to the facts set forth herein.

4.      I am informed by counsel that the U.S. Trustee Fee Guidelines request that any application for employment of an attorney under 11 U.S.C. §§ 327 or 1103 be accompanied by a verified statement from the client that addresses the following:

i.      The identity and position of the person making the verification. The person ordinarily should be the general counsel of the debtor or another officer responsible for supervising outside counsel and monitoring and controlling legal costs.

ii.     The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

iii.    The number of firms the client interviewed.

iv.     If the billing rates are not comparable to the applicant's billing rates for other nonbankruptcy engagements and to the billing rates of other comparably skilled professionals, the circumstances warranting the retention of that firm.

v.      The procedures the client has established to supervise the applicant's fees and expenses and to manage costs. If the procedures for the budgeting, review and approval of fees and expenses differ from those the client regularly employs in nonbankruptcy cases to supervise outside counsel, explain how and why. In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

## **Selection of Counsel**

5.      Given Waller's expertise in restructuring matters, Waller is well qualified to represent the Debtor in this Chapter 11 Case. The Waller attorneys leading this engagement, and generally the attorneys in Waller's Finance and Restructuring Practice Group, have significant experience representing debtors in large and complex cases under the Bankruptcy Code. In

addition, Waller has extensive experience in and expertise in virtually all other areas of the law that may arise in the chapter 11 case.

## Rate Structure

6.       Waller has informed the Debtor that its rates for bankruptcy representations are comparable to the rates Waller charges for non-bankruptcy representations.

7.       Waller's rates and material terms of engagement are consistent with comparably skilled professionals. The Debtor has approved Waller's proposed hourly rates as set forth in the Application and the Roth Declaration. Waller has informed the Debtor that its hourly rates are subject to periodic adjustments to reflect economic and other conditions. The Debtor has consented to such ordinary course rate increases.

## Cost Supervision

8.       The Debtor recognizes its responsibility to closely monitor the billing practices of its counsel to ensure that the fees and expenses remain consistent with the expectations and the exigencies of the Chapter 11 Case. On behalf of the Debtor, I, or someone at my direction, will review the invoices that Waller regularly submits. Waller's fees and expenses will be subject to periodic review on a monthly, interim and final basis during the course of the chapter 11 case by the Debtor, the Office of the U.S. Trustee for the Middle District of Pennsylvania, and creditors and other parties in interest upon the public filing of fee applications with the Court.

9.       In addition, at all times, I, or someone at my direction, will assure the services performed by Waller are not duplicative of other professionals engaged by the Debtor in the ordinary course, such as Kleinbard, LLC.

4818-0742-2898.3

3

I declare under penalty of perjury that the foregoing is true and correct on this 24th day of February 2020.

*/s/ David L. Danneker*
Very Reverend David L. Danneker, Ph.D.
Vicar General and Moderator of the Curia

4818-0742-2898.3

4